(No. 41176.—

FEDERAL-BRYANT MACHINERY COMPANY, Appellant, *vs.*
THE DEPARTMENT OF REVENUE, Appellee.

*Opinion filed Sept. 24, 1968.—Rehearing denied Nov. 21, 1968.*

HARRY H. RUSKIN, and MARTIN L. BOGOT, both of Chicago, (RUSKIN and ROSENBAUM, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (JOHN J. O'TOOLE and JOHN J. GEORGE, Assistant Attorneys General, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, Federal-Bryant Machinery Company, appeals directly to this court from a judgment of the circuit court of Cook County in an action under the Administra-

tive Review Act. (Ill. Rev. Stat. 1967, chap. 110, pars. 264-279.) The action was brought to review those aspects of an administrative determination of the Department of Revenue which were adverse to the plaintiff with respect to a deficiency assessment under the Retailers' Occupation Tax Act covering the period April 1, 1951, to August 31, 1954, inclusive.

The plaintiff is an Illinois corporation with offices in Chicago. It has been the exclusive representative, in specified territories, of various manufacturers of machine tools whose plants are located outside of Illinois, and who maintain no inventories in Illinois. Prior to November of 1946 the plaintiff had bought machine tools from the out-of-state manufacturers it represented and had resold them to purchasers in Illinois.

On September 27, 1946, the Department issued a ruling with respect to the taxability of agents of "manufacturers of machine tools located outside of Illinois under contracts with such manufacturers which establish the relationship of principal and agent." That ruling set out certain suggested procedures, and stated that those procedures if followed, would be considered to have established an agency relationship so that the transactions would not be subject to the Retailers' occupation tax. At the request of the plaintiff, its sales agency agreements with manufacturers were modified by including the suggested provision that the plaintiff was to act only as soliciting agent for the manufacturer, without power to bind the manufacturer contractually, and that all orders would be forwarded to the manufacturer's home office for acceptance. The plaintiff also requested its customers to address their orders to the manufacturer, in care of the plaintiff, as agent, and to include on the face of each order a statement to the effect that "it shall not be binding upon either party until accepted" by the manufacturer at its home office outside of Illinois.

In 1957, after the Illinois Use Tax (Ill. Rev. Stat. 1957,

chap. 120, pars. 439.1-439.22) had become effective, the manufacturers requested the plaintiff to return to the practice that had been followed prior to November of 1946. The plaintiff did so, and since 1957 the plaintiff has purchased machines from the manufacturers it represents and then sold them to its own customers.

The 1946 ruling was revoked by the Department of Revenue, effective April 1, 1951. The new ruling which replaced it stated that exemption would no longer be permitted "simply because such dealers' method of doing business conforms to the agency requirements" set out in the 1946 ruling. After enumerating specific circumstances that the Department would take into account, the ruling concluded by stating that "any facts bearing on the question of the possible existence or non-existence of an alleged agency may be considered."

The sales involved in the case were made between April 1, 1951 and August 31, 1954, in the following manner: Plaintiff's salesmen would prepare and submit to an interested Illinois customer, a proposal offering a specific machine to be built by a particular manufacturer at a stated price. The customer would then prepare its own purchase order based on the proposal, address it to the manufacturer in care of plaintiff, and mail the order to the plaintiff, who checked the order for accuracy, copied it, and forwarded it to the manufacturer. When the machine was built the manufacturer shipped it directly to the Illinois customer, f.o.b. the manufacturer's plant, and billed the plaintiff for the stated retail price, less commission. Plaintiff then billed the customer, who remitted to the plaintiff, usually by check payable to the plaintiff, but occasionally by check payable to the manufacturer. Plaintiff guaranteed the credit of each prospective purchaser whose order plaintiff forwarded to the out-of-state manufacturer, and if the purchaser did not pay, plaintiff was obligated to, and did, pay the purchase price, less commission, to the manufacturer.

The administrative hearing officer found that the transactions in question were sales to the plaintiff by the out-of-state manufacturers for resale by the plaintiff to the Illinois customers, and that the issues in this case were the same as those raised in *Marshall & Huschart Machinery Co.* v. *Department of Revenue* (1960), 18 Ill.2d 496. He also found that the plaintiff's operations were the normal operating procedures of a seller, and that the addressing of purchase orders to plaintiff as agent was fictitious and done for the purpose of avoiding taxation under the Department's 1946 ruling which had been revoked. The circuit court affirmed.

On this appeal the plaintiff argues that it was not engaged in the business of selling tangible personal property in this State, within the meaning of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1951, 1953, chap. 120, par. 441), and that "the transactions in question are exempt from Retailers' Occupation Tax under the 'commerce clause' of the Constitution of the United States."

The plaintiff says that during the period involved in this case it acted as a soliciting and billing agent for the out-of-state manufacturers of machine tools, and that during that period the machine tools were sold by the manufacturers directly to the Illinois consumers and not by the manufacturers to the plaintiff for resale. The situation in this case closely resembles that in *Marshall & Huschart Mach. Co.* v. *Dept. of Revenue* (1960), 18 Ill.2d 496; *cert.* den. 363 U.S. 820. The only significant difference between the two cases is that there the taxpayer purchased, from the out-of-state manufacturers, the accounts receivable that were generated by the sales of the machine tools. The plaintiff contends that the absence of that element in this case is crucial since that factor led this court to find that what in form was a purchase of an account receivable was in substance no different than a purchase of goods for resale. We think that the contention is without merit. In

the present case the plaintiff guaranteed payment to the manufacturers for the goods sold and in its practical effect the guarantee of payment does not differ from a purchase of the account receivable. In each situation the manufacturer is relieved of concern for the credit of the ultimate purchaser. Both procedures are inconsistent with the normal relationship between principal and soliciting agent.

The ordering and billing procedures employed in these transactions also support the hearing officer's finding that plaintiff was engaged in the business of selling at retail. After the plaintiff sent to the customer a proposal prepared from the standard price lists supplied by the manufacturer, the customer addressed its purchase order to the manufacturer in care of the plaintiff, and sent it to the plaintiff. The plaintiff then checked the purchase order against the proposal and mailed it to the manufacturer. After the manufacturer completed and shipped the machine to the customer, it billed the plaintiff, not the customer, for the full price of the machine, and it sent a credit memo to the plaintiff for the amount of its commission. The plaintiff then billed the customer, who remitted to the plaintiff, usually by a check made out to the plaintiff.

If no more than an agency was involved, it would not be necessary to route the purchase order through the plaintiff, nor would it be necessary that payment be made to the agent rather than the principal.

In the context of the plaintiff's method of doing business both before and after the period involved in this case, the plaintiff's continuing responsibility for payment to the manufacturers and its complicated ordering and billing procedures justify the conclusion that in fact the plaintiff purchased from the manufacturers and resold to its customers.

The plaintiff contends that even if, as we have held, the transactions in question were sales by the manufacturer to the plaintiff and resales by the plaintiff to the consumers,

imposition of the tax is nevertheless barred by the commerce clause of the constitution of the United States. Its position is that where the only source of supply for goods sold is located outside of the State, the transaction is interstate by necessity rather than by choice, and that a tax measured by gross receipts is therefore invalid. The Court of Appeals of New York did indeed draw such a distinction in *National Cash Register Co.* v. *Taylor* (1937), 276 N.Y. 208, 11 N.E.2d 881, 883, *cert.* den. 303 U.S. 656, saying: "Here, on the contrary, the contract made outside of the state called for the delivery of goods which were manufactured outside of the state and which could not be procured within the state. Interstate commerce was contemplated and required by the contract of sale. The state has no power to impose a tax upon that kind of transaction."

That view was the underlying basis for the decisions of the New York courts which were reviewed in *McGoldrick* v. *Berwind-White Coal Mining Co.* (1940), 309 U.S. 33, 84 L. Ed. 565, and in the companion cases of *McGoldrick* v. *Felt & Tarrant Mfg. Co.* and *McGoldrick* v. *A. H. Du-Grenier, Inc.,* 309 U.S. 70, 84 L. Ed. 584. In each of these cases the New York courts had held the tax invalid, relying upon the *National Cash Register* case. In each of these cases the Supreme Court of the United States reversed, and sustained the tax. And in doing so the court rejected the argument that the commerce clause prohibits a tax laid upon the sale of goods which crossed State boundaries pursuant to contracts which "contemplate or require the transportation of merchandise interstate to the taxing state." 309 U.S. at 53, 84 L. Ed. at 575.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*