(No. 27064.—Reversed and remanded.)

Ex-Cell-O Corporation, Appellant, *vs.* George B. McKibbin, Director of Finance, *et al.*, Appellees.

*Opinion filed May 20, 1943—Rehearing denied Sept. 15, 1943.*

ECKERT & PETERSON, and GILLESPIE, BURKE & GILLES-
PIE, (OWEN RALL, and LOUIS F. GILLESPIE, of counsel,)
for appellant.

GEORGE F. BARRETT, Attorney General, (HARRY L.
ARNOLD, of counsel,) for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

The Ex-Cell-O Corporation instituted this suit in the
circuit court of Sangamon county against the Director of
Finance and the State Treasurer to test its tax liability
under the Retailers' Occupation Tax Act and to protect its
interests in money paid as taxes under the act, if it should
be determined that no tax was due. It was alleged that,
prior to the starting of the suit, plaintiff paid its taxes
under protest for the months of April to December, 1940,
both inclusive, and for January, 1941, making a total of
$7154.12. A temporary injunction was issued enjoining
the State Treasurer from transferring the amount paid
from the protest fund to some other fund. Thereafter an
amended complaint was filed to which defendants filed a
motion to strike, alleging that the pleading did not state a
cause of action. The motion was sustained and a decree
entered dismissing the amended complaint. The decree
also contained a provision for holding the taxes paid or to
be paid in *status quo* until the cause could be reviewed

and the rights determined. Plaintiff appealed direct to this court.

The pertinent facts admitted by the motion are that plaintiff is a corporation organized under the laws of Michigan and is engaged in the manufacture and sale of machinery, machine parts, machine tools and other articles of a similar nature with its factory and place of business located at Detroit. Plaintiff never qualified to do business in this State as a foreign corporation and has no office, store, warehouse or bank account in this State. It sells some of its manufactured products to persons who reside in Illinois and who purchase the articles for use and consumption and not for resale and such portion of the business is the only part involved in this suit. It is alleged that the business upon which the Department claims a tax is due is transacted through what is commonly called "manufacturer's representatives." It is alleged plaintiff has three of these representatives, that they are corporations authorized to do business in Illinois and are actually engaged in business in this State. They will be referred to as representatives.

Each of these representatives entered into a written contract with plaintiff in which territorial area, representative's authority, its duties, commissions and other matters are set forth. It is stated that for the area described in the contract the representative named therein is the "sole representative for the sale of the" products of the Ex-Cell-O company. It contained the following provisions: "Orders for goods received by the corporation (Ex-Cell-O) through or from the party of the second part (representative) or from customers within the territory of the party of the second part shall not be binding or firm orders until accepted in writing by the corporation; * * * The party of the second part (representative) shall not have authority to make any contracts or incur any liability on behalf of the corporation (Ex-Cell-O Company) the authority of

the party of the second part being limited to the solicitation and forwarding of orders to the Ex-Cell-O Company subject in all cases to acceptance by it." It is also stated that "all orders shall be taken in the name of the corporation (Ex-Cell-O Company) which shall bill the purchaser on its own terms and carry such accounts in its own name. The corporation hereby reserves the right to accept or reject all orders received." It is also stipulated in the contract that the Ex-Cell-O company agreed to furnish to the representative, copies of all correspondence to customers or prospective customers within the territory described in such contract and to furnish printed price lists and quotations and all special details required. All samples, demonstration equipment, sales instructions, undistributed price lists and data sheets furnished the representative remained its property and were to be returned upon termination of the agreement. The contract provided for the payment of commissions upon the goods sold by the representative. The Ex-Cell-O company paid no part of the expenses incurred by the representative in soliciting orders. The contract was to run for one year from date subject to the right of the Ex-Cell-O company to change commissions, territory and prices. Provision was made for termination by either party on thirty days' notice. The representative agreed that it would not either directly or indirectly sell or offer for sale, or solicit orders for the sale of any products of any other person, firm or corporation which conflicted with the products manufactured by the Ex-Cell-O company without first obtaining written consent of the latter company.

It was alleged in the amended complaint that all orders which were accepted by plaintiff were sold f.o.b. Detroit, Michigan, and that the carrier, whether by mail or common carrier, was the agent of the consignee. It was alleged that a considerable portion of the transactions referred to was for machines made according to specifications submitted by the Illinois purchaser, that such specifications and

the engineering details connected therewith, as well as the credit of the purchaser, were all passed upon by plaintiff at its Detroit office and that acceptance or rejection was not in any respect a perfunctory matter but involved an exercise of the engineering skill of plaintiff's employees and whether it was equipped to deliver such specified machines in the form and within the time stated in the order. It was alleged that this method of transacting business antedated amendment of· the rules of the Department of Finance and that it was not designed or adopted for the purpose of avoiding the tax.

The questions briefed and argued refer solely to the construction and meaning to be given particular sections of the Retailers' Occupation Tax Act. Any question involving the legislature's constitutional authority to impose a State tax upon persons engaged in an occupation of selling personal property at retail, which property in the course of the transfer crosses State lines, is not presented on this appeal.

The amended complaint pleads rule 5 of the Department, as amended, effective March 15, 1940, and plaintiff argues as to the legal effect of such rule but the Attorney General, in presenting the contention of the Department, does not rest its claim of authority to impose the tax upon a construction of the rules of the Department but refers to the oft repeated pronouncement of this court, that the rules of the Department can neither limit nor extend the scope of the statute. *Mahon v. Nudelman,* 377 Ill. 331; *Mallen Co.* v. *Department of Finance,* 372 Ill. 598.

Section 2, as amended in 1941, (Ill. Rev. Stat. 1941, chap. 120, par. 441,) provides: "A tax is imposed upon persons engaged in the business of selling tangible personal property at retail in this State." Paragraph 1 of section 1 defines "sale at retail" to mean "any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale

in any form as tangible personal property, for a valuable consideration."

Plaintiff contends that the provisions of the statute referred to do not authorize the levying of a tax upon a person engaged in selling personal property at retail unless it appears (1) that the situs of the occupation for which the tax is levied is in this State, and (2) that the sales by which the amount of the tax is to be measured were sales made in this State. Defendants define their contentions by the statement that the only issues are (1) whether or not the plaintiff, in respect to the transactions under consideration, was engaged in a taxable occupation in this State, and (2) if it was taxable whether its tax liability may be computed at the rate of a percentage of the gross receipts realized from all sales occurring as a result of and in the course of the taxable occupation.

After this cause was submitted on briefs and oral arguments, an opinion was filed in *Standard Oil Company* v. *Department of Finance*, 383 Ill. 136. Although that case and the instant one are distinguishable on the facts, the conclusion reached in the *Standard Oil case* as to the meaning of that part of section 2 which provides: "A tax is imposed upon persons engaged in the business of selling tangible personal property at retail in this State" is controlling as to the point that the business that forms the basis for the tax must be one that is carried on within this State.

An occupation, the business of which is to sell tangible personal property at retail, is the composite of many activities extending from the preparation for, and the obtaining of, orders for goods to the final consummation of the sale by the passing of title and payment of the purchase price. It is obvious that such activities are as varied as the methods which men select to carry on retail business and it is therefore not possible to prescribe by definition which of the many activities must take place in Illinois to constitute it

an occupation conducted in this State. Except for a general classification that might be made of the many retail occupations, it is necessary to determine each case according to the facts which reveal the method by which the business is conducted.

If one engaged in business in another State, seeks retail outlet for some of his products by sales to persons in this State, and contacts such prospective purchasers through some agency, then the extent of his relationship to that agency, and the authority conferred on it, becomes important in determining whether he has, by adopting such method of business, established himself in business in this State. Plaintiff contends that its representatives who solicited orders in this State were independent contractors and that the purpose of their employment was to produce a single result, namely that of obtaining orders. Insofar as such contention seeks to rest the question of taxable liability upon a relationship of independent contractor, we can not agree. The tax liability is not to be determined by the mere finding that such a relationship did or did not exist. The liability for the tax is to be gathered from the extent of the authority that the principal has conferred upon the agency he has selected to represent him in this State, and the part of the business of selling he is authorized to perform.

In this case the authority plaintiff conferred upon its representatives was limited by the terms of the contract to the solicitation of orders. The representatives had closed territory in which to operate but they had no authority to accept an order or bind the plaintiff in any manner. When the representative obtained an order from a prospective customer his authority in reference to the order was at an end. It is true the solicitation of orders was important to plaintiff in obtaining business from persons in this State, but the orders obtained by its representatives were no more than a proposal of the purchaser to buy upon

terms to be determined and agreed upon by the plaintiff. These matters, as well as the consummation of the sale and the delivery of the article, occurred in another State. Under such limited authorization from plaintiff to its representatives we find no basis for concluding that plaintiff, through such restricted representation, was engaged in a business of selling tangible personal property at retail in this State.

The views expressed as to the tax liability of plaintiff make it unnecessary to consider questions relating to the sales upon which a tax could be measured if one was to be imposed. For the reasons stated, the decree of the circuit court is reversed and the cause remanded with directions to proceed in accordance with the views expressed.

*Reversed and remanded, with directions.*