(No. 31916

AUTOMATIC VOTING MACHINE CORPORATION, *vs.* RICHARD J. DALEY, Director of Revenue, Appellee.—(HARRY A. LIPSY *et al.*, Appellants.)

*Opinion filed May 24, 1951—Rehearing denied September 17, 1951.*

JACOB SHAMBERG, BERNARD J. KORZEN, and JOHN J. MORTIMER, Corporation Counsel, all of Chicago, (EDWARD W. PARLEE, and JOHN P. DALY, of counsel,) for appellants.

IVAN A. ELLIOTT, Attorney General, of Springfield, (ROBERT J. BURDETT, and JOHN T. COBURN, both of Chicago, of counsel,) for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County in favor of the Director of the Department of Revenue of the State of Illinois, hereinafter referred to as defendant, whereby the court declared that the Automatic Voting Machine Corporation, hereinafter referred to as plaintiff, is, and has been at the time of each and every sale of voting machines made by it to the election commission of the city of Chicago, engaged in the business of selling tangible personal property at retail in the State of Illinois; that the company is under a duty to apply for and receive a certificate of registration under the Retailers' Occupation Tax Act; that the company is under the duty to file tax returns under that act; and that the company is under a duty to pay the occupation tax of the State of Illinois on the sales of voting machines to the board of election commissioners of the city of Chicago.

The cause arose from a complaint filed by the plaintiff, wherein it asked for a declaratory judgment that the sales of the plaintiff to the board of election commissioners of

the city of Chicago did not constitute the occupation of selling tangible personal property at retail in the State of Illinois, subjecting the plaintiff to the Retailers' Occupation Tax Act. (Ill. Rev. Stat. 1949, chap. 120, par. 440, *et seq.*) The second count of this complaint provided for the recovery of sums paid as such tax if the court found for the plaintiff under the first count. This second count of the complaint is undisposed of at the present time.

The facts, in effect, were agreed upon at a pretrial conference between the parties. There seems to be no basic dispute as to the facts.

The plaintiff is a Delaware corporation and has its only offices and factory in Jamestown, New York. It manufactures, sells and deals in voting machines as its only stock in trade. It has no office, warehouse, building or structure in Illinois and has no phone listing at any place in Illinois. During the course of the transactions involved, plaintiff became registered in Illinois as a foreign corporation on April 29, 1948. It, however, keeps all its records in New York, maintains its billing department in New York, and all payments set forth in this cause were made to the plaintiff in New York.

One Griffen was the sales agent of the plaintiff during the transactions here. He is a resident of New York and when in Chicago lives in hotels on a daily basis. By his contract with the plaintiff corporation, he engages to promote sales, supervise employees in the installation of machinery and to instruct city officials and the public in the use of voting machines. By this same employment contract, he has no power to bind plaintiff in any way and all promotion undertaken by him is in the company name. He was assisted in Chicago on the sales in question by one Senninger, who had the same type of employment contract as Griffen.

Prior to January 16, 1948, the plaintiff had 40 voting machines leased to the board of election commissioners of

the city of Chicago, under a rental contract. These 40 machines leased under the aforesaid agreement were included in a subsequent sale of 450 machines to the commission. This first sale arose out of an invitation of the board of election commissioners for sealed bids for 410 electric and 40 manual voting machines, which invitation bore date of January 16, 1948, and the bids in reply to which had to be filed on or before January 23, 1948.

The invitation, like all others to follow, required evidence of ability to manufacture and of financial ability, the submission with the bid of a certified check in a specified amount, and the execution of a contract and the furnishing of a bond "in an amount to be determined later."

The plaintiff received the invitation in New York by mail. Officers of the plaintiff there prepared and signed a bid which was then given to Griffen for delivery to the commission. Griffen delivered this bid in person in Chicago on January 23. On February 20, 1948, the board of election commissioners of the city of Chicago entered into a resolution whereby it was ordered that a "contract be awarded" to the plaintiff for the purchase of such machines. The board of election commissioners prepared a written contract dated February 21, had it signed and executed in Chicago by the proper officials and then sent it to New York, where it was signed and executed by the proper officials of the company. The contract provided the title to the goods was to pass in Chicago, and the company has complied with the contract, including the delivery of the bond specified in the contract.

Subsequently, on September 22, 1948, the board of election commissioners sought bids for 1500 more machines, and the company received such invitation to bid in New York by mail as it had in the first instance. A bid was prepared in New York and mailed to the commission, whereupon the commission passed a resolution that a "contract be awarded" to the plaintiff. Again, the commission

prepared a contract dated October 2, 1948, which was executed in Chicago by the commission and then forwarded by it to New York, where it was executed by the proper officials of the plaintiff company.

On June 17, 1949, the commission again invited bids, this time for 2,000 machines, which bids had to be filed prior to June 24. The plaintiff again received this invitation to bid in New York, and there prepared its bid. This bid again was delivered by Griffen in Chicago and receipt of the bid was followed by the same type of resolution as before, with the same type of contract and form of execution following.

Subsequent to the delivery of the machines, or part of them, under the foregoing contracts, the company furnished sufficient representatives to install and place the machines and to assist in the preparation of ballots and the use of the machines at election time. These representatives were present at elections and did all things to assist the board of election commissioners to place the machines in proper operation. This work was done under the supervision of Griffen, but all of these representatives were sent to Chicago from New York and returned there upon the conclusion of the work in progress. The machines were manufactured in New York and were delivered to Chicago from New York by truck.

Contentions of both parties present the sole question as to whether this transaction makes the plaintiff subject to the payment of retailers' occupation tax in the State of Illinois.

The court below held that the plaintiff was subject to the tax, that a contract actually consummated in and made binding within the State constitutes a sale under the various tax laws; that the officers of plaintiff in New York consciously determined to come into Illinois and make bids, which was not solicitation; that it sent men whom it called messengers into Cook County and there made

bids which, when accepted, became binding. The acceptance of the bid, the lower court held, constituted a contract and there was nothing left to be done except to reduce the agreement to writing. The court distinguished the situation whereby agents of the corporation stationed in Chicago to promote and solicit business came to the board of election commissioners and obtained an order subject to approval of the superiors in New York. The court stated that if such were the situation it would unhesitatingly say that the plaintiff was not engaged in business in Illinois. The court then goes on to say that the plaintiff was given the opportunity to make a bid, which would be binding, and to accompany it with a check. When it did so, it was doing business in Cook County. The court finally determined that solicitation "plus," as expressed in tax cases, is sufficient to subject the plaintiff to the application of the Retailers' Occupation Tax Act.

The defendant attempts to support the verdict of the lower court on the ground that plaintiff had engaged for many years in promoting sales in Illinois and that, as the court pointed out, the contracts for the sale of the machines were formed in Illinois. He states that the plaintiff was in Illinois every time it submitted a bid, title to the machines passed in Illinois, the contracts were enforceable in Illinois and subsidiary services required were performed in Illinois.

The plaintiff negatives each of these arguments, saying that the company was not doing business or carrying on any occupation in Illinois because it had no agent here who had the authority to make a contract or bind the company in any way. It states that the submission of bids from New York was not doing business in Illinois, the promotional work was not the doing of business in Illinois, that there was nothing to indicate any carrying on of the taxable occupation of selling in Illinois, the contracts did not occur in Illinois, but in Jamestown, New York, where

the company officers received and signed the written contracts which had been executed by the election commissioners in Chicago, that the occupation taxed by the act is the composite of many activities and the act is not intended to apply to a portion only of the composite, that the submission of bids is only a part of the composite, that the company did not have a business establishment or situs in Illinois, that the imposition of the tax is in violation of the due-process clause of the Illinois and Federal constitutions, that the activities are an integral part of interstate commerce and not separable from such commerce, and that the imposition of the tax on the transactions in question is the levy of a tax directly on interstate commerce.

The kernel of the argument of the plaintiff is that an occupation, the business of which is to sell tangible personal property at retail, is the composite of many activities extending from the preparation for, and the obtaining of, orders for goods, to the final consummation of the sale or the passing of title in payment of the purchase price. (*Ex-Cell-O Corp.* v. *McKibbin,* 383 Ill. 316.) The defendant argues that the plaintiff had been attempting to persuade officials of the city of Chicago to purchase voting machines since 1930. This promotional work bore fruit in 1948 with the first order for 450 machines.

The defendant points out that when the parties have assented to all of the essential terms of the contract, (referring here, of course, to the submission of bids which were accepted in Illinois,) the mere reference to future writing will not negate the existence of a present contract. (*Baltimore and Ohio Southwestern Railroad Co.* v. *People ex rel. Allen,* 195 Ill. 423.) The acceptance of the bid, the defendant urges, constituted a binding agreement which could be enforced, even though a contemplated formal contract had not been signed. (*West Chicago Park Comrs.* v. *Carmody,* 139 Ill. App. 635.) The defendant then points out that there were no reservations in

the bids here and no reservations could be implied, all of which supports the conclusion that when the bids of the company were accepted by the defendant, a definite contract existed between the parties. He further points out that by the very terms of the contract the title to the machines was to pass in Illinois, which, together with the other contentions heretofore set forth, emphasize the irresistible conclusion that all of the elements of the sale are present in Illinois.

The plaintiff, on the other hand, argues that the submission of bids in Illinois did not constitute doing business in Illinois, and it was not presently doing business in Illinois since it did not have any agency present in this State with the power to bind it, contractually or otherwise. (*Ex-Cell-O Corp.* v. *McKibbin,* 383 Ill. 316; *Booz* v. *Texas & Pacific Railway,* 250 Ill. 376, and related cases.) Plaintiff urges that the contracts of sale occurred in New York when the written contracts were completed by signature of the company's officers. (*Baltimore and Ohio Southwestern Railroad Co.* v. *People,* 195 Ill. 423.) The company then urges that even if the bids of the company and the resolutions of the election commissioners constituted by themselves contracts of sale, the company did not engage in a requisite amount of activities in Illinois so as to be carrying on the occupation of selling at retail in Illinois, as contemplated by the Retailers' Occupation Tax Act. Ill. Rev. Stat. 1949, chap. 24, par. 22A-16; *Ex-Cell-O Corp.* v. *McKibbin,* 383 Ill. 316, and related cases.

The principal question involved here is whether or not the Retailers' Occupation Tax Act is designed to apply to the situation which we now have before us. We shall consider this question prior to discussing in any way the question of due process and the constitutionality of the act as applied to this transaction.

Section 2 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1949, chap. 120, par. 441,) provides: "A tax

is imposed upon persons engaged in the business of selling tangible personal property at retail in this State at the rate of three per cent (3%) of the gross receipts from such sales of tangible personal property made in the course of such business prior to July 1, 1941, and two per cent (2%) of ninety-eight per cent (98%) of the gross receipts from such sales after June 30, 1941. However, such tax is not imposed upon the privilege of engaging in any business in interstate commerce or otherwise, which business may not, under the Constitution and statutes of the United States, be made the subject of taxation by this State."

A search of the definitions set forth in section 1 of the act (Ill. Rev. Stat. 1949, chap. 120, par. 440,) discloses no discussion of what constitutes the engaging or carrying on of the occupation of selling tangible personal property at retail in the State of Illinois, and no criteria for determining whether or not a seller is engaging in the occupation of such sales in this State. This situation has been recognized by this court in the following quote from *Ex-Cell-O Corp.* v. *McKibbin,* 383 Ill. 316: "An occupation, the business of which is to sell tangible personal property at retail, is the composite of many activities extending from the preparation for, and the obtaining of, orders for goods to the final consummation of the sale by the passing of title and payment of the purchase price. It is obvious that such activities are as varied as the methods which men select to carry on retail business and it is therefore not possible to prescribe by definition which of the many activities must take place in Illinois to constitute it an occupation conducted in this State. Except for a general classification that might be made of the many retail occupations, it is necessary to determine each case according to the facts which reveal the method by which the business is conducted."

Searching the cases, we find that in *Standard Oil Co.* v. *Department of Finance,* 383 Ill. 136, we discussed the

effect of section 2 and analyzed it to the extent that we determined that there are certain factors that must be present before a tax can be levied. These factors are: (1) that there shall be a person; (2) that such person shall be engaged in an occupation; (3) that the occupation shall be the selling of tangible personal property, and (4) that such sale should be at retail. We went even further in discussing these problems and determined the type of sales which came under the purview of the Retailers' Occupation Tax Act. We said, "The purpose of the part of the statute which precedes the words 'in this State' is to prescribe the character of an occupation upon which a tax may be imposed, and we conclude that the words 'in this State' refer to the occupation rather than to the sales. If the legislature had intended that the sales at retail, to constitute an occupation, should be limited to those occurring within the State, it would undoubtedly have inserted such limitation in the definition that is given in section 1. We conclude that the words 'in this State' in the part of the statute under consideration refer to the locale where the person who is to be subjected to the tax shall carry on the occupation." In short, the tax is imposed on the "occupation" of the retailer and not upon the "sales" as such. *Mahon* v. *Nudelman,* 377 Ill. 331.

In determining whether or not the act shall apply to the transaction before us, (and no one can contend that sales were not made in this State,) the statute must be given practical and common-sense construction. *Ahern* v. *Nudelman,* 374 Ill. 237.) This is a basic consideration, especially in the type of situation where each case, of necessity, rests completely and entirely on the foundation of its own facts. Precedent is of little help in most situations, except as a guide by analogy.

It is interesting to note the language of the trial court, drawn from the contentions and arguments of the defendant, in rendering its opinion on the facts before us. The

court said, "some rules of guidance may be garnered from the decisions as, for instance, that mere solicitation of business by an agent who has no authority to consummate a contract within the State, will not subject the foreign Corporation, either to service of process, or to a tax." The court then dismisses this contention of defendant, stating that there was no such power in the agents of the plaintiff here, and then went on to say that "It was not as if the agents of the Corporation who were stationed here to promote and solicit business came to the Election Commissioners and obtained an order from them, subject to the approval of their superiors in New York. If that were the situation, I would unhesitatingly say that the Plaintiff was not engaged in business here." The lower court then went on to distinguish the present fact situation by saying that the facts here present a different problem, in that "the officers of the Company in New York consciously determined to come in here and make bids." The court went on to say, "That was not solicitation. They sent men, whom they called their messengers, into Cook County and there made bids, which, when accepted, became binding."

The court then commented that "the plaintiff wasn't required to make this bid. It was given the opportunity—not to solicit business—but to make a bid, that would be binding, and to accompany it with a check." The court then said, "Moreover, the tendency of the court, particularly in tax cases of the type here involved, has been to hold that presence within the State of agents for solicitation, 'plus,' is sufficient to subject the principal to the authority of the State."

The court then goes on to hold that the "plus" is satisfied by reason of the activities of the plaintiff's agents during the promotional period, together with the passage of title to the property in the State, plus the fact that the bids were a binding contract made in Illinois.

As the trial court states, the presence of agents in this State without the power to bind the plaintiff is not sufficient to subject the plaintiff to the occupation tax. *Booz* v. *Texas and Pacific Railway Co.* 250 Ill. 376, states very definitely, "There was no one in this State who had power to make any contract or bind the defendant in any way, and the mere solicitation of business by persons who have no other authority is not doing business within this State."

The plaintiff here is a manufacturer who sells his products directly to cities and villages desiring to use automatic voting machines. It it not in business in the usual sense of selling at retail to the general public. The question now arises whether the mere submission of bids, together with the promotional work of the agents, is sufficient to subject the company to our act. It is true that possibly the acceptance of the bid in Chicago by the board of election commissioners constituted a contract, but we cannot say that the mere execution of a contract in this State is sufficient to classify the parties engaged therein in the business or occupation of selling tangible personal property at retail. Further, that such a bid was not a completed contract is borne out by the fact that the board of election commissioners passed a resolution to the effect that the contract should "be awarded" to the plaintiff. The bid itself was not treated as a contract at all. In *Baltimore and Ohio Southwestern Railroad Co.* v. *People,* 195 Ill. 423, a bid and contract were involved. In that case it was held that where, at the time a bid was accepted, a formal contract was to be signed at a future date, and the written contract was broader in terms than the bid, then there is no contract in existence until the written contract is executed. Such is the case before us.

In *Automotive Material Co.* v. *American Standard Metal Products Corp.* 327 Ill. 367, the question arose as to whether or not a corporation was doing business within this State within the meaning of section 94 of our statute

on corporations. We there held that to determine this question it was not material where contracts of a foreign corporation were made. In this latter case it was also stated "It is also established by the authorities of this country that a foreign corporation is not doing, transacting, carrying on or engaging in business in a State, within the meaning of such statutes, by the doing of acts therein which are merely preliminary to the transaction of the business in which the corporation is to engage, such as offering bids in the State on work to be performed therein, entering into a contract to perform such work, or by giving a bond to secure performance of such contract."

The cases cited by defendant, however, tend to weaken the legal support of plaintiff's argument, for which we have indicated our approval. We thus have a confusion of authority cited by both plaintiff and defendant assembled for us like a jigsaw puzzle of precedent which, while helpful, we do not feel is altogether determinative of the situation before us.

The question which we must ultimately answer is whether or not the act was intended to apply to the situation here. A practical and common-sense review of these transactions convinces us that it was not so intended.

Not all vendors of personal property are subject to the act. The statute in section 1 provides: "The isolated or occasional sale of tangible personal property at retail * * * does not constitute engaging in such business."

In *Herlihy Mid-Continent Co.* v. *Nudelman,* 367 Ill. 600, we pointed out that even if a substantial portion of a business is the selling of tangible personal property it is not necessarily subject to the tax.

We have held that public utilities are not subject to the act, (*Peoples Gas Light and Coke Co.* v. *Ames,* 359 Ill. 152,) even though, for some purposes at least, their commodities may be characterized as personal property. *People* v. *Menagas,* 367 Ill. 330.

In *Adair Printing Co.* v. *Ames,* 364 Ill. 342, we held printers to be without the application of the act, holding, in essence, that the destruction of the commercial value of paper by printing for a particular customer creates a service rather than a sale and thereby nullifies the application of the act.

In *Huston Brothers Co.* v. *McKibbin,* 386 Ill. 479, we held that the sales of medicines, drugs and medical supplies to hospitals and physicians were not taxable under the act, on the theory that such purchasers were not the ultimate users.

Through all these cases runs the underlying thought that the sellers were selling to persons who were rendering services, even though we have always carefully pointed out that the tax might be imposed upon a retail business wherein considerable service is rendered. *Mahon* v. *Nudelman,* 377 Ill. 331.

To us the analogy seems clear. Plaintiff had made sales of voting machines to the election commission of the city of Chicago, a body politic. These machines are devoted to occasional use during elections and are as limited to such service as ballots printed by a printer for such occasions.

These machines are used, ultimately, by whom? By the election commission, in part, in its business of conducting and determining the results of elections. But the greater use, by far, is by the people of that city in registering their vote for the candidate of their choice.

The decision to be drawn from all these cases is that the act does not apply to the transactions under our consideration. As pointed out by plaintiff, the Illinois activity consisted only of promotional work, delivery of bids, transfer of title, delivery of machines and servicing. These factors, coupled with the use of the article sold and the foregoing analogy, are insufficient to justify the application of the act, (*Automotive Material Co.* v. *American*

*Standard Metal Products Corp.* 327 Ill. 367,) and, in fact, such application could open the door to dangerous precedent. It was in New York that the bid was prepared, terms were fixed, contracts executed, payments and billings made, and machines manufactured.

Even were we wrong in selecting the cases of plaintiff as decisive of these facts, we are still faced with the inescapable conclusion that all analogies to previously decided cases exempt the vendor here. Certainly the practical and common-sense view prevents the application of the act.

We cannot but feel that to extend this act to cover the situation before us would be to distort its meaning and would lead to a disastrous result. It is to be noted that sustaining the defendant here would be to subject all companies from other jurisdictions, seeking to do business in this State, to application of the act by engaging in promotional activity and then submitting a bid which is accepted. We do not feel that our act intended such a result. After all, promotion is a necessary part of everyday business, as is the submission of bids.

We have read the case of *Gross Income Tax Division* v. *Fort Pitt Bridge Works,* 86 N.E. 2d (Ind.) 685, cited by the defendant herein, and find that it is not applicable to the facts before us. That case involved a gross income tax law of the State of Indiana which levied a tax upon the entire gross income of nonresidents, derived from activities or business or any other source within the State of Indiana.

For the reasons set forth herein and from the decision we have reached, it is unnecessary to discuss the further arguments of either the plaintiff or the defendant. Suffice it to say, the judgment of the circuit court of Cook County is reversed.                    *Judgment reversed.*