LEVIN-TOWNSEND COMPUTER CORPORATION *v.* TOWN
OF STRATFORD

COURT OF COMMON PLEAS  FAIRFIELD COUNTY  FILE NOS. 91194, 91195
AT BRIDGEPORT

Memorandum filed June 24, 1970

*Pullman, Comley, Bradley & Reeves,* of Bridge-port, for the plaintiff.

*Edward F. Stodolink,* town attorney, for the defendant.

## I

LEVINE, J.  These cases arise out of an attempt by the assessor of the town of Stratford to assess the

plaintiff for certain computer equipment and machinery, located in Stratford, on the grand list of October 1, 1967.

The assessment proposed was $567,630, which included a statutory 10 percent penalty for the plaintiff's failure to file a report of the equipment with the assessor. The parties stipulated that, for the purpose of the instant case, the assessed valuation of the plaintiff's equipment could be fixed by this court at the said figure of $567,630, on the list of October 1, 1967. The tax, at 36.7 mills on the proposed assessment, was $20,832.02.

In case No. 91194, after a recital of certain basic facts set forth hereinbelow, the writ alleged that the proposed assessment was "manifestly excessive," and further claimed that the property involved was not, in any respect, taxable in Stratford on the October 1, 1967, grand list. The prayer for relief was that the property should be stricken from the grand list for that year.

In case No. 91195, the writ recited the essential facts of the proposed assessment; the plaintiff's appeal therefrom to the Stratford board of tax review; its refusal to strike the property from the October 1, 1967, grand list; and the plaintiff's allegations of nontaxability thereof. It concluded with the same prayer for relief as in case No. 91194.

The two files thus present the identical issue of the taxability of the plaintiff's machinery and equipment on the October 1, 1967, grand list. They were tried and briefed together. The parties have stipulated that the court's decision will be final and binding with respect to both cases.

Pursuant to the stipulation of the parties, the following facts are uncontradicted. Prior to October 1, 1967, the plaintiff, a New Jersey corporation, was

engaged in the business of leasing computer equipment and maintained an office for conducting its business in New York City. The plaintiff had purchased the equipment from International Business Machines Corporation, hereinafter called IBM. On or about July 28, 1967, the plaintiff executed an agreement with the Sikorsky Aircraft Division of United Aircraft Corporation, hereinafter called Sikorsky, pursuant to which it agreed to lease certain computer equipment and machines for use by Sikorsky at its plant in Stratford.

The computer equipment was delivered to Sikorsky at its Stratford plant on or about July 28, 1967, and remained in that plant up to and including October 1, 1967. The equipment and machines became the plaintiff's property on September 28, 1967, and likewise constituted the plaintiff's property on October 1, 1967, and thereafter.

The installation of the equipment was completed by IBM upon Sikorsky's premises on August 30, 1967. For a period of ninety days thereafter, maintenance of the machines and equipment was performed by IBM, pursuant to an agreement between IBM and the plaintiff.

For a period of one year following November 30, 1967 (marking the expiration of the original ninety-day term), IBM also maintained the equipment, pursuant to a separate agreement between IBM and the plaintiff.

Prior to October 1, 1967, the plaintiff had not procured a certificate of authority to "transact business" in Connecticut, as required by General Statutes § 33-396, and, therefore, on that date, or at any time prior thereto, had not complied with that statute.

Prior to October 1, 1967, IBM had procured the certificate required by § 33-396, and for a period of

more than one year prior to October 1, 1967, had been thereby authorized to "transact business" in Connecticut.

On or about December 6, 1967, the assessor of Stratford wrote the plaintiff, stating that the computer equipment and machinery of the plaintiff located at Sikorsky's plant in Stratford was assessed on the list of October 1, 1967, at $567,630, including the penalty.

The plaintiff took an appeal from the assessment to the Stratford board of tax review, requesting that these items be stricken from the list. Its appeal was denied by the board under date of February 19, 1968.

At the trial, the following additional facts were undisputed. The plaintiff at no time prior to October 1, 1967, maintained an office, a place of business, a bank account, a telephone listing, or a post office box either in Stratford or within this state. Further, no salesman employed by the plaintiff prior to October 1, 1967, was domiciled in, or specifically assigned to, the state of Connecticut. The plaintiff did have salesmen operating out of its main office in New York City, including Martin Karnoff.

Karnoff resided in Nassau County, New York, and was one of the three salesmen assigned to the plaintiff's New York office. His sales territory included Connecticut. Karnoff negotiated the agreement between the plaintiff and Sikorsky covering the lease in this case. Karnoff negotiated with Sikorsky by telephone and correspondence. At no time did Karnoff visit the Sikorsky plant in Stratford.

The basic lease agreement was executed on behalf of Sikorsky at its Stratford plant and was thereafter sent for final signature to the plaintiff's New

York City office. The plaintiff executed the agreement in New York City, by Frank B. McShane, the plaintiff's secretary.

Prior to October 1, 1967, Karnoff had negotiated and concluded two similar agreements for the leasing of the plaintiff's machinery and equipment to the Norden Division, United Aircraft Corporation, in Norwalk, and the Electric Boat Division, General Dynamics Corporation, in Groton. These two leases were processed in substantially the same manner as the Sikorsky agreement.

It previously appeared that the defendant's assessment might be urged either under § 12-43 or § 12-59 of the General Statutes. Section 12-43 is captioned "Property of nonresidents" and provides for the tax liability of nonresidents owning real estate or tangible personal property. Section 12-59 is concerned with the liability and method of taxing personal property and real property of both domestic and foreign corporations.

The defendant has stated in its brief that "it is under Sec. 12-59 that this property is taxable." In view of the defendant's abandonment of any attempted assessment under § 12-43, the court's discussion herein will be concerned solely with the liability, if any, under § 12-59.

Section 12-59 provides, in relevant part, as follows:

"LISTING OF CORPORATION PROPERTY. . . . [A]nd the whole property in this state of each corporation organized under the law of any other state or country, shall be set in its list and liable to taxation in the same manner as the property of individuals. . . . [A]nd all of the personal estate of such corporation which is permanently located or stationed in any town shall be set in the list of the town in which such property is located, and all other personal

property of such corporation shall be set in the list of the town in which such corporation has its principal place of business or exercises its corporate powers; and, when it has two or more establishments for transacting its business in different towns, . . . it shall be assessed and taxed for each such establishment, and for the personal property attached thereto, or connected therewith, and not permanently located in some other town, in the town . . . or other municipal subdivision having the power of taxation in which such establishment is located. . . . The words 'permanently located,' as used herein, means located for any seven or more of the twelve months preceding the assessment day."

## II

Section 12-59 provides, in part, that the personal estate of a foreign corporation which is "permanently located or stationed in any town" may be set in the list of that town. As stated previously, § 12-59 specifically defines the words "permanently located," to mean its location in the taxing town for any seven or more of the twelve months preceding the assessment day. For convenience, this portion of § 12-59 will be referred to as the "permanent location" clause.

This provision of § 12-59 does not specifically require, as a condition of taxation, that the foreign corporation have been authorized to "transact business" within this state. Thus, a foreign corporation may be liable to pay a tax on its personal property, located in a town for seven or more of the twelve months preceding the assessment day, whether or not that corporation has qualified to conduct business in Connecticut, under § 33-396.

Accordingly, if the computer equipment and machinery involved in the present case had been physically located on the Sikorsky premises for seven

or more of the twelve months preceding October 1, 1967, the defendant's attempt to impose a property tax on these items would have been sustained.

The seven-month rule is an alternate expression of the doctrine that, in general, personal property may be legally and constitutionally taxed only where it may be deemed to have acquired a "situs," or "permanence of location," in the taxing district or unit. *Security Mills, Inc.* v. *Norwich,* 145 Conn. 375, 377; *Philco Corporation* v. *East Hartford,* 26 Conn. Sup. 196, 198.

There is no doubt, on the basis of the stipulation of the parties and the record, that the computer machinery and equipment had not been located in the Sikorsky plant for the minimum seven-month period required by the "permanent location" clause. In fact, the defendant's brief concedes that this clause is inapplicable as a valid basis for asserting taxability in the instant case.

The court concludes that the computer equipment and machinery could not be taxed by the defendant, on the list of October 1, 1967, pursuant to the "permanent location" clause.

Section 12-59 provides, further, that all other personal property of the foreign corporation, not covered by the "permanent location" clause, may be set in the list of the town in which "such corporation has its principal place of business or exercises its corporate powers." This will be referred to as the "business and powers" clause.

The stipulation of facts and the testimony adduced at the trial demonstrate that the activities of the plaintiff as a foreign corporation, limited to negotiating the three leases, could not, in any way, result in the establishment of a "principal place of business" of the plaintiff in Connecticut. *Middletown Ferry Co.* v. *Middletown,* 40 Conn. 65, 70.

Moreover, Karnoff's negotiation of any or all of these three leases, on the present record, could not be construed to constitute an exercise of the plaintiff's corporate powers in Connecticut, within the meaning of § 12-59. *Security Mills, Inc.* v. *Norwich,* supra, 379. The defendant's brief concedes that these conclusions are correct and, by implication, that the "business and powers" clause cannot serve as a legal basis for sustaining the assessment herein. See also General Statutes § 33-397 (as to leasing transactions).

The court finds that the "business and powers" clause does not validate the assessment in the present case.

The defendant's chief reliance is on the "establishments" clause. It has alleged in its brief that since, on October 1, 1967, there were three computer installations in Groton, Norwalk and Stratford, Connecticut, which contained leased equipment owned by the plaintiff, each of these facilities constituted an "establishment," and tax liability on the part of the plaintiff under § 12-59 thereby resulted.

The defendant stresses *Williams Bros. Mfg. Co.* v. *Naubuc Fire District,* 92 Conn. 672. The case stated, in part (p. 675):

" 'Establishment,' as used in this statute, refers to those agencies which serve for transacting the business of the corporation. All such, together with the personal property attached thereto or connected therewith, come within this provision of this statute. . . . [A]nd any building in which any part of the business of the corporation is carried on is an establishment within the meaning of this statute."

A careful reading of the *Williams Bros.* case, supra, reveals that it does not constitute any binding authority relative to the three leasing transactions herein.

In the *Williams Bros.* case, supra, the defendant fire district was located in Glastonbury. The court sustained the taxation of the plaintiff's personal property only to the extent of such goods as were actually located within the fire district. The court's definition of "establishment," in the context of the *Williams Bros.* case, referred to part of the building owned by the plaintiff and used as its general offices and also for the manufacture of its products.

"Establishment," by way of a legal definition, denotes something more than mere items of specialized computer equipment and machinery. It is interpreted, in a broader sense, to mean a place of business, an industrial plant, or other place of employment. *Matson Terminals, Inc.* v. *California Employment Commission,* 24 Cal. 2d 695, 707.

It is clear that the Stratford real estate and buildings herein were owned by Sikorsky. If this parcel were classified as an "establishment," it was Sikorsky's establishment, and not that of the plaintiff, for purposes of § 12-59. Although the computer equipment located therein was the property of the plaintiff, the establishment to which it was attached was not the property of the plaintiff within the rule of the *Williams Bros.* case, supra. Similarly, there was no proof that the real estate at the Groton and Norwalk locations was owned by the plaintiff. See *General Motors Corporation* v. *Mulquin,* 134 Conn. 118, 127.

The "agencies" definition of the *Williams Bros.* decision, supra, does not assist the defendant. Sikorsky's Stratford plant, on October 1, 1967, constituted an agency for transacting Sikorsky's business. Certainly, it was not an agency for transacting the plaintiff's business, within the meaning of § 12-59.

It is concluded that the attempted assessment, based on the initial provisions of the "establishments" clause, is without merit.

Moreover, even assuming that the plaintiff's three computer installations might be construed to be "establishments," it must, in addition, be proved that they were used for "transacting . . . business" of the plaintiff, pursuant to the qualifying phrase of § 12-59 immediately following the "establishments" clause. It will be recalled. that the plaintiff had never registered to transact business in Connecticut, pursuant to § 33-396.

Section 33-397 (a), which is a limitation on the scope of § 33-396, provides as follows:

"Any foreign corporation may purchase, hold, mortgage, *lease,* sell and convey . . . personal estate in this state for its lawful uses and purposes . . . *without such action constituting transacting business in this state for the purposes of this chapter."* (Italics supplied.)

Hence, the plaintiff was not obligated to register with the secretary of state in the instant case since § 33-397 (a) eliminates a lease transaction involving personal property from the definition of "transacting business" in Connecticut, under § 33-396. It is obvious to the court that the exemption of leasing contracts negotiated by a foreign corporation, under § 33-397 (a), must likewise control the determination of tax liability, under § 12-59.

In other words, if the plaintiff's leasing agreements are eliminated from the definition of "transacting business," under the exemption provisions of § 33-397 (a), it must follow that the identical activities cannot constitute "transacting . . . business" under § 12-59. *Automatic Voting Machine Corpora-*

*tion* v. *Daley,* 409 Ill. 438; 17 Fletcher, Private Corporations § 8465, p. 553 (Perm. Ed. Rev. Repl. 1960).

The defendant urges the case of *Curly Construction Co.* v. *Darien,* 147 Conn. 308. In the *Curly* case, the court's decision was based on the fact that the taxpayer, a New York corporation, failed to sustain its burden of proof by rebutting the allegation that certain road building equipment had acquired a tax situs in Darien. The case thus turned on a failure of proof as to production of the ultimate facts.

In the instant case, however, the facts, with particular reference to the special nature of the leasing transactions, have compelled a conclusion contrary to *Curly.* Accordingly, the *Curly* case cannot be considered to have controlling force herein.

### III

The issues are found for the plaintiff in both cases. Judgment may enter in both cases for the plaintiff, ordering that the equipment and machinery involved were not subject to personal property taxation by the defendant on its grand list of October 1, 1967, and should be stricken from that list.