INTERNATIONAL-STANLEY CORP., Plaintiff-Appellee, Cross-Appellant, *v.* THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants, Cross-Appellees.

First District (1st Division)    No. 61008

Opinion filed July 6, 1976.

398

William J. Scott, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellants.

Paul A. Teschner, of Teschner Professional Corporation, of Chicago, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

International-Stanley Corporation (plaintiff) paid certain assessments to the Illinois Department of Revenue (defendant), under protest. (Ill. Rev. Stat. 1975, ch. 127, par. 172.) The assessments related to the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 440 *et seq.*) and the Use Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.1 *et seq.*). On plaintiff's complaint seeking declaratory and injunctive relief, the circuit court held that those transactions in which the tangible personal property allegedly sold by plaintiff was attached to and became part of rolling stock moving in interstate commerce were not subject to either tax; but, conversely, that those transactions in which tangible personal property was attached to and made a part of rolling stock not moving in interstate commerce were subject to both types of taxes. Defendant appeals and plaintiff cross-appeals.

The pertinent facts appear from a stipulation entered into by the parties before trial and from testimony at trial. Plaintiff is a corporation engaged in the sale of products to railroads for use in connection with shipment of grain and other loose, unpackaged commodities in bulk. The plaintiff's products are grain doors, hopper car covers and the tools and accessories used in connection therewith. Grain doors are corrugated paper panels which are nailed across the inside of railroad boxcar doorways or used to line weakened inside walls of railroad freight cars. Hopper car covers are used to cover open-top railroad cars. In addition, plaintiff sells tools and accessories used in connection with the installation of these grain doors and hopper car covers.

The plaintiff's railroad customers furnish the grain doors, hopper car covers and accessories to bulk shippers. This protects open-car shipments from the elements and prevents loose products, such as grain, from spilling out of freight cars; thus enabling the common carrier railroads to

"furnish safe and adequate car service" in compliance with Federal law. 49 U.S.C. §1(11) (1959).

Regarding shipment and delivery of the grain doors, the parties stipulated that after the doors are delivered to the railroad they are stored at various points along the railroad line pending redelivery to the shippers. These storage points are generally at or near the point where shipment of the bulk product commences. The grain doors are then delivered to shippers along with empty railroad freight cars.

The tariffs provide that the grain doors are to be installed by the shipper at its own expense. But, when the shipper so elects, the railroad will install the grain doors at the point of loading for a charge of $2.54 per car. It is also stipulated that the installation of the grain doors and accessories is "part of the process of loading the freight car." The doors and accessories are used only for one single continuous shipment and are not reused. Rates charged by the railroads for shipment are subject to prior approval by the Interstate Commerce Commission. Generally the rates, as approved, include a charge for the grain doors and accessories furnished to shippers by the railroads. In those few instances where a charge is not included in the rate, the railroad charges the shipper an additional fee for the grain doors and accessories. There was testimony at trial that this extra fee situation is limited to those instances where freight is carried "cross town" within the same terminal.

Plaintiff is a Nebraska corporation owned equally by International Paper Company, a New York corporation, and The Stanley Works, a Connecticut corporation, both of which are licensed to do business in Illinois. The grain doors are manufactured by International Paper at its plant in Illinois. The hopper car covers are manufactured at its plant in Arkansas. The accessories and tools are manufactured by Stanley Works at its Illinois plant. Upon completion of tools and accessories they are shipped to the International Paper plant in Illinois for storage pending further shipment. While thus in storage in Illinois, these items are included in plaintiff's inventory.

Plaintiff employs three salesmen and three engineers who work almost exclusively in Illinois. The salesmen generate and solicit orders. The engineers familiarize users of the grain doors with installation and investigate complaints about these items. The salesmen have no authority to accept orders from plaintiff's customer railroads. Instead, all customers prepare purchase orders which are sent directly to plaintiff's Nebraska office. Although plaintiff is under no duty to accept an order from a customer railroad, it has not rejected any such order within memory. The parties also stipulated that it is difficult to conceive of a situation in which an order would be rejected. Similarly, payment of plaintiff's invoices are

made to plaintiff's Nebraska office where collection of accounts originates.

There are five distinct fact patterns regarding shipment and delivery of the grain doors and hopper car covers which are pertinent to this appeal:

1). The customer railroad takes delivery of the grain doors outside of Illinois and functional use of the doors commences outside of Illinois.[1]

2). The railroad takes delivery of the grain doors in Illinois where functional use begins.

3). The railroad takes delivery of the grain doors in Illinois but transports them out of the State where functional use will then begin.

4). The railroad takes delivery of the doors outside of Illinois but brings them into Illinois where functional use begins.

5). Hopper car covers, manufactured by International paper in Arkansas, are delivered to railroads in Illinois to fill orders received by plaintiff.

The parties have agreed that the transactions in category number 1 are not subject to Illinois Retailers' Occupation Tax or Use Tax. As will later be detailed, categories 2, 3 and 4 form the issues concerning assessment of Retailers' Occupation Tax. Illinois Use Tax comes directly into question primarily with regard to the hopper car covers in category 5.

In September 1964, the Illinois Department of Revenue audited plaintiff's books and records. The Department subsequently notified plaintiff that it was liable for $208,335.96 under the Illinois Retailers' Occupation and Use Tax Acts, for the period from January 1, 1961 through January 31, 1964. Plaintiff paid this amount under protest. Various additional assessments were made and are to be included in the disposition made thereof by this opinion.

On November 13, 1964, plaintiff filed a complaint in the circuit court seeking an adjudication that its sales of grain doors were not subject to either Retailers' Occupation or Use Taxes. Plaintiff prayed injunctive relief restraining defendant from collecting such taxes from plaintiff. Plaintiff further prayed a refund of all amounts paid. On November 16, 1964, the trial court enjoined defendant from disbursement and use of these payments and of any future amounts paid by plaintiff under protest in connection with its sales of grain doors and accessories.

In this court, defendant contends that plaintiff's sales of grain doors were subject to taxation under the Illinois Retailers' Occupation Tax Act; the application of that tax does not burden interstate commerce; the grain

---

[1] Functional use of the grain doors is deemed to begin when they are affixed to the freight cars prior to loading of the cars.

doors sold to the railroads by plaintiff were not "resold" by the railroads within the meaning of the Retailers' Occupation Tax Act; plaintiff's sales of grain doors and hopper car covers were subject to taxation under the Illinois Use Tax Act and plaintiff's sales were not exempt from taxation under the statutory exemption for rolling stock moving in interstate commerce.

Plaintiff urges that the trial court correctly held that the commerce clause of the United States Constitution prohibits taxation of those grain doors which become part of rolling stock moving in interstate commerce; the trial court erred in failing to hold that plaintiff was not a retailer at all; even assuming arguendo that plaintiff was a retailer, the trial court erred in failing to hold that plaintiff is not liable for Retailers' Occupation Taxes since it is not engaged in a retail occupation within Illinois; the trial court erred in failing to hold that the Interstate Commerce Clause forbids imposition of Retailers' Occupation Tax because plaintiff's receipts from interstate commerce would be taxed without apportionment between the portion of plaintiff's occupation conducted within Illinois and the portion conducted outside of the State; and the trial court erred in failing to hold that because of the rolling stock exemption in the Illinois Use Tax Act, the railroads incurred no use tax liability and plaintiff had no liability to collect use taxes from the railroads.

■■ Both the Retailers' Occupation Tax Act (herein "ROTA", Ill. Rev. Stat. 1975, ch. 120, par. 440 *et seq.)* and the Use Tax Act (herein "UTA", Ill. Rev. Stat. 1975, ch. 120, par. 439.1 *et seq.)* impose taxation only in the event of a retail sale. The ROTA defines a sale at retail as a sale "for the purpose of use or consumption, and not for the purpose of resale * * * , for a valuable consideration." (Ill. Rev. Stat. 1975, ch. 120, par. 440.) The UTA definition of a retail sale is a sale "for the purpose of use, and not for the purpose of resale * * * , for a valuable consideration." (Ill. Rev. Stat. 1975, ch. 120, par. 439.2.) Plaintiff contends in its cross-appeal that it sells grain doors and related items to railroads for resale and not for use or consumption so that neither tax is applicable. This raises the initial issue as to whether plaintiff sells grain doors and accessories and hopper car covers at retail within the meaning of the statutes with particular reference to categories 2, 3, 4 and 5 above.

Plaintiff has cited a mass of authority regarding this issue. A discussion of all or even most of the cases cited would be impossible for reasons of space limitation. Our study has led us to conclude that the opinion of the Supreme Court of Illinois in *American Airlines, Inc. v. Department of Revenue* (1974), 58 Ill. 2d 251, 319 N.E.2d 28, is dispositive of plaintiff's contention in this regard. In *American Airlines* plaintiff purchased food from a supplier to be served to passengers in flight. The passengers were not charged additional sums for these meals beyond the cost of their

tickets. The court stated that " '* * * a sale is one for use and consumption and not for resale, even though the purchaser transfers the commodity purchased, provided he does not transfer it for a direct and specific consideration.' " (58 Ill. 2d 251, 257, quoting from *Fefferman v. Marohn* (1951), 408 Ill. 542, 547, 97 N.E.2d 785.) The Supreme Court thus held that, although passengers paid a fare which included a charge for meals, the airline was essentially selling transportation and there was no sale of meals by them within the meaning of the ROTA.

■■ Similarly, in the instant action, the grain door covers and related items are furnished to the shippers by the railroads without additional charge but are included in the tariffs charged for railroad transportation. The railroads which purchase grain doors from plaintiff are essentially selling shipping services regarding which acquisition and disposition of the grain doors is merely incidental.

■■ Plaintiff cites and depends upon Rule 50, paragraph 2, promulgated by the defendant. This rule provides, in effect, that where tangible personal property is sold to purchasers who transfer it to others, along with services for which a charge is made, this property is being sold or transferred for purposes of resale and thus the sellers or transferors are not liable under ROTA. Plaintiff reasons from this rule that it is merely transferring the grain doors to the railroads who in turn transfer them to the shippers, together with transportation service for which a charge is made, so that plaintiff should not be liable under ROTA. In our opinion, this Rule 50 is not applicable in the case before us. Rule 50, according to its title, is applicable to "vendors of tangible personal property employed for premiums, advertising, prizes, etc." We reject plaintiff's contention that it employs the grain doors for premiums, advertising, prizes or for any allied or similar use within the purview of Rule 50. No such situation is presented by the case before us. Our rejection is based in part upon *Boye Needle Co. v. Department of Revenue* (1970), 45 Ill. 2d 484, 259 N.E.2d 278, where the court considered a situation regarding distribution of display racks by a distributor as premiums or rewards to various retailers who had purchased large quantities of merchandise. The court held that under Rule 50 the transfer of the premiums to the distributor from purveyors thereof was not subject to ROTA.

■■ Plaintiff urges in this regard that the user of an item of tangible personal property is the person who utilizes the item in furtherance of its own business welfare and that in *American Airlines*, the airline, and not the passenger who ultimately consumed the meal, was the user of the food for purposes of ROTA. As the parties stipulated, railroads are required by Federal law to furnish grain doors. Installation of the doors at the expense of the shipper does not alter the fact that the railroads use the

doors in direct furtherance of their business activities quite comparable to the manner in which airlines use meals served in flight.

■■ We next consider whether plaintiff was engaged in a retail occupation in Illinois so that it is subject to taxation under the ROTA. There is an accepted legal distinction between performance of activities which constitute a retail occupation within Illinois and mere occurrence of a sale at retail within the State. (*Automatic Voting Machine Corp. v. Daley* (1951), 409 Ill. 438, 447, 100 N.E.2d 591.) Plaintiff correctly contends that mere solicitation of sales by agents located in Illinois is not sufficient to bring a seller within the ROTA. *Ex-Cell-O Corp. v. McKibbin* (1943), 383 Ill. 316, 50 N.E.2d 505.

In defining solicitation, the courts have carefully examined the authority of the soliciting agent. (*Ex-Cell-O Corp.*, 383 Ill. 316, 322.) In *Ex-Cell-O Corp.*, plaintiff's sales agents did not have authority to accept or reject orders and "acceptance or rejection was not in any respect a perfunctory matter but involved an exercise of the engineering skill of plaintiff's employees and whether it was equipped to deliver such specified machines in the form and within the time stated in the order." (383 Ill. 316, 320.) Quite to the contrary, in the case before us, the parties have stipulated that, plaintiff's home office has the authority to reject orders solicited by its agents in Illinois, "but has not done so within memory, and it is difficult to conceive of a situation where it would do so." This stipulation, combined with the fact that plaintiff employs three engineers in Illinois to familiarize users of the grain doors with methods of installation and to investigate customer complaints, leads us to conclude that plaintiff's activities in Illinois are greater than the mere solicitation contemplated by the Supreme Court in *Ex-Cell-O* and similar cases.

In determining whether plaintiff is engaged in a retail occupation in Illinois, many factors must be considered. The Supreme Court recognized this in *Ex-Cell-O* where it stated (383 Ill. 316, 321, 322):

"An occupation, the business of which is to sell tangible personal property at retail, is the composite of many activities extending from the preparation for, and the obtaining of, orders for goods to the final consummation of the sale by the passing of title and payment of the purchase price. It is obvious that such activities are as varied as the methods which men select to carry on retail business and it is therefore not possible to prescribe by definition which of the many activities must take place in Illinois to constitute it an occupation conducted in this State. Except for a general classification that might be made of the many retail occupations, it is necessary to determine each case according to the facts which reveal the method by which the business is conducted."

In addition to the work of plaintiff's salesmen and engineers within Illinois, the grain doors are manufactured in, shipped from, and, in many instances, delivered within this State.

The Illinois Supreme Court has looked beyond the form of an allegedly interstate transaction to find that it actually constituted an intrastate sale, taxable under the ROTA. In *Marshall & Huschart Machinery Co. v. Department of Revenue* (1960), 18 Ill. 2d 496, 165 N.E.2d 305, *cert. denied*, 363 U.S. 820, 4 L. Ed. 2d 1517, 80 S. Ct. 1259, and *Federal-Bryant Machinery v. Department of Revenue* (1968), 41 Ill. 2d 64, 241 N.E.2d 857, the plaintiff corporations structured their sales so that they were ostensibly interstate in nature, thereby avoiding payment under ROTA in Illinois. Depending upon the actuality of the situation rather than the externalities of corporate activity, the Supreme Court held plaintiffs liable for payment of the tax.

■■ Likewise, in the instant action, two corporations which are licensed to do business in Illinois and which manufacture products within the State, have formed a subsidiary outside of Illinois which markets their products. If the actual corporate owners of plaintiff were each to sell its products directly to the railroads they would be liable under ROTA. By acting in concert through the use of plaintiff corporation, the actual owners thereof have attempted to structure their sales and corporate activites so that ROTA is not applicable.

The stipulated facts above cited demonstrate that the greater portion of activities in connection with retail sales to railroads by plaintiff took place within Illinois. Orders from customers within the State were actively solicited by plaintiff's salesmen domiciled within Illinois. All activities in connection with the actual filling of these orders such as manufacture, shipment and in many cases delivery took place within Illinois. Plaintiff maintained an inventory of tools and accessories in Illinois. The complete domination and management of plaintiff by its corporate owners is also apparent from the record. With one exception, all officers of plaintiff are officers or employees of its corporate owners. The directors of plaintiff are appointed by these same owners. Both of these corporate owners are licensed to do business in Illinois and have plants located within the State.

■■ It is correct, as plaintiff points out in detail, that many of its activities were carried out in locations other than the State of Illinois, including maintenance of a business headquarters, billing, collection and the keeping of records; but, the proper criterion to be applied here is not so much the quantum of activities outside of the State as it is the nature, character and significance of activities of plaintiff within the State of Illinois directly related to the business of retail selling. It follows

necessarily that plaintiff is a retailer in Illinois, subject to the provisions of ROTA.

Defendant next urges that the imposition of ROTA upon plaintiff's sales of grain doors and accessories does not offend the Commerce Clause of the Federal Constitution. Plaintiff answers this argument by raising two contentions. First, with regard to categories 2, 3 and 4, plaintiff argues that ROTA is an impermissible, unapportioned tax on gross receipts from interstate commerce. Plaintiff's second contention is that taxation of its sales in category 3 is prohibited by the Commerce Clause because these grain doors are used in interstate commerce outside of the State.

■■ The Illinois Supreme Court has held that "when a purchaser in a sale in Illinois takes delivery of the goods in Illinois the sale is not in interstate commerce and is taxable under State law, though the purchaser immediately takes the goods out of Illinois for use outside of Illinois." (*American Airlines, Inc. v. Department of Revenue* (1974), 58 Ill. 2d 251, 259, 319 N.E.2d 28.) As shown above, plaintiff was engaged in a retail occupation in Illinois at the time in question here, and the deliveries of the grain doors in categories 2 and 3 occurred within the State. The ROTA assessment which plaintiff has challenged does not tax its gross receipts from all sales, but only from those sales arising out of its activities as an Illinois retailer. The fact that plaintiff conducts some of its business activities outside the State does not preclude defendant from taxing these sales of grain doors and accessories in categories 2 and 3 which took place within Illinois. *Norton Co. v. Department of Revenue* (1950), 405 Ill. 314, 90 N.E.2d 737, *reversed in part*, 340 U.S. 534, 95 L. Ed. 517, 71 S. Ct. 377, *modified*, 409 Ill. 216, 99 N.E.2d 346.

■■ The requirement that a local incident occur to bring a sale within the taxing power of a State (*Norton Co. v. Department of Revenue* (1951), 340 U.S. 534) was recognized by the Illinois Supreme Court in *American Airlines*. Therefore, we find that sales in category 4 are not subject to ROTA because they were delivered to the purchasing railroads outside the State of Illinois. We will discuss the application of UTA to these transactions in a later portion of this opinion.

■■ In its argument regarding category 3, wherein grain doors and accessories were delivered to purchasing railroads within Illinois and taken outside of the State before functional use began, plaintiff urges this court to disregard an established line of cases concerning the constitutionality of ROTA as applied to sales of various commodities to railroads for use outside of Illinois. (*Pressed Steel Car Co. v. Lyons* (1955), 7 Ill. 2d 95, 129 N.E.2d 765; *Superior Coal Co. v. Department of Revenue* (1954), 4 Ill. 2d 459, 123 N.E.2d 713, and *Moffat Coal Co. v. Daley* (1950), 405 Ill. 14, 89 N.E.2d 892.) Plaintiff argues that these cases

are inapplicable here because the grain doors and accessories are used by the shippers rather than by the railroads. As shown above, the fact that the shippers themselves either install the grain doors or pay the railroad for such installation does not affect our conclusion that the grain doors are used by the railroads to promote their own business welfare by enabling them to provide appropriate cars for shipping as required by Federal law.

■■ The fact that the grain doors are sold and delivered to railroads in Illinois for use out of the State does not necessarily make the sales transaction interstate so as to render application of ROTA unconstitutional. (*Moffat Coal Co.*, 405 Ill. 14, 16.) Furthermore, the Supreme Court has rejected the argument that the role of a railroad as a carrier when it carries goods consigned to itself is separate and divorced from its role as a purchaser of such goods. (*Pressed Steel Car Co.*, 7 Ill. 2d 95, 101.) We conclude that imposition of the tax by defendant on sales in category 3 is within constitutional requirements.

We next consider whether Illinois UTA applies to plaintiff's sales of grain doors and accessories in category 4 and to sales of hopper car covers in category 5. We need not reach the question of whether UTA is applicable to transactions in categories 2 and 3 because the ROTA is applicable to those sales and the parties have stipulated that "if plaintiff is held liable for the Illinois retailers' occupation or use tax on account of its 'taxable' sales of grain doors and accessories during the First [Assessment] Period it has already paid the use taxes to which the proposed assessments * * * relate." Therefore, plaintiff would in no event be liable for additional or double payments due to use tax liability for those same sales.

■■ At all times pertinent to this litigation, the UTA included an exception for: "the use, in this State, of tangible personal property which is acquired outside the State and which is moved into this State for use as rolling stock moving in interstate commerce; * * * ." (Ill. Rev. Stat. 1965, ch. 120, par. 439.3.) In July, 1965, the legislature defined the term "acquired outside this State" as follows:

" 'Acquired outside this State', whenever used in this Section, in addition to its usual and popular meaning, shall include the delivery, outside Illinois, of tangible personal property that is purchased in this State and delivered from a point in this State to the point of delivery outside this State." (Ill. Rev. Stat. 1965, ch. 120, par. 439.3.)

Defendant correctly concedes that this exception applies to grain doors and accessories in Category 4 which were delivered to the purchasing railroads outside of Illinois, even though they might later be brought into the State for use.

■■ Plaintiff further contends that the rolling stock exception to the statute applies to the hopper car covers delivered to railroads in Illinois from Arkansas. To support its argument, plaintiff suggests that the 1967 amendment to the UTA which deleted the requirement that the exempt items be acquired outside of the State, was intended to apply retroactively. We reject plaintiff's argument because Illinois statutes are prospective in their operation and will not be construed to be retroactive unless the statutory language is so clear that it cannot be construed otherwise. (*People ex rel. Eitel v. Lindheimer* (1939), 371 Ill. 367, 21 N.E.2d 318.) Plaintiff's reliance on *Johnson v. Marshall Field & Co.* (1972), 8 Ill. App. 3d 937, 291 N.E.2d 310, *affirmed*, 57 Ill. 2d 272, 312 N.E.2d 271, in this regard is misplaced. In that case, the court considered an amendment to a taxing statute in construing the legislature's intent in enacting the original statute. However, the statutory amendment specifically stated what the legislature had intended "since the inception of" the statute in question. (See 8 Ill. App. 3d 937, 940.) The UTA contains no similar language. Therefore, we find that the rolling stock exemption did not apply to the sales in category 5 and that plaintiff was properly assessed for use tax in connection with those sales.

■■ ■ We reach the following results with regard to the various categories of sales. set out above. As above shown, transactions in category number 1 are not subject to ROTA or to UTA. Sales in categories 2 and 3 may be taxed under ROTA. Sales in category 4 are exempt from taxes under both ROTA and UTA. Sales in category 5 are taxable only under UTA. These guidelines should enable the trial court to determine the merits of each assessment attempted against plaintiff. The final judgment order entered July 24, 1974, is reversed and the cause is remanded with directions that further proceedings be had and additional orders be entered herein not inconsistent with the views above expressed and the conclusions reached.

Reversed and remanded with directions.

BURKE and O'CONNOR, JJ., concur.