(No. 27023.—Reversed and remanded.)
STANDARD OIL COMPANY, Appellant, *vs.* THE DEPART-
MENT OF FINANCE *et al.*—(GEORGE B. MCKIBBIN,
Director of Finance, *et al.,* Appellees.)

*Opinion filed March 18, 1943—Rehearing denied May 17, 1943.*

BUELL F. JONES, D. LOGAN GIFFIN, and C. TERRY LINDNER,. for appellant.

GEORGE F. BARRETT, Attorney General, (HARRY L. ARNOLD, of counsel,) for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court: Plaintiff seeks a reversal of a decree of the circuit court of Sangamon county which held plaintiff's occupation as to the sales described in the stipulation of facts to be taxable under the Retailers' Occupation Tax Act. (Ill. Rev. Stat. 1941, chap. 120, par. 440 *et seq.*) Plaintiff's tax for April, 1940, was paid under protest, and, within the time prescribed by section 2a of the statute relating to the payment of public money into the State treasury, (Ill. Rev. Stat. 1941, chap. 127, par. 172,) this action was started against the State Treasurer to enjoin him from transferring the amount paid from the protest fund to another fund. The Department of Finance was made a party defendant but later by order of court the suit was dismissed as to the Department and the Director of the Department substituted. A temporary injunction issued restraining the treasurer as to the April, 1940, payment of $2075.30. Plaintiff alleged it would continue to pay the monthly assessments under protest and the temporary injunction was extended to include the taxes paid under protest in months subsequent to April, 1940, and until further order of the court.

Plaintiff was organized under the laws of Indiana, and licensed to do business in this State as a foreign corporation. Its business is the refining of crude petroleum, the manufacturing and compounding of various petroleum products and the marketing of the same both at wholesale and retail. It maintained five sales offices and one business office in

this State. It owns and operates six refineries, one of which is located at Wood River, this State, one at Whiting, Indiana, one at Sugar Creek, Missouri, and the others in western States. The products which were the subject of sale in this case were manufactured at the Whiting and Sugar Creek refineries. None of the products sold from the Wood River plant are included in the stipulation of facts.

The method followed in the making of these sales was in accordance with a long-established practice and antedated the change of Rule 5 of the Department as amended in March, 1940. Most of the sales were in car lots but the difference in quantity sold did not alter the method of making or consummating the sale. The products sold were generally taken from plaintiff's storage tanks or warehouses located at the refineries and loaded into tank cars or boxcars. In a few instances the products sold were for a special order and as to those they were prepared at one or the other of the two refineries mentioned and loaded direct into cars.

The stipulation classifies the sales into five classes, *viz.*, A to E. In the main they are of a common pattern but since this and companion cases argued at the same term present questions as to taxable liability of occupations engaged in a field of business not previously considered by this court, it is deemed advisable to set forth the details of the sales which distinguish the various classes.

Class A includes sales to railroad companies who are doing interstate business, a part of which is in Illinois. The products sold to such customers are delivered to them at the refinery. The order is placed and accepted at plaintiff's place of business in this State. The purchaser may bring the product into Illinois for use and consumption here but all transportation costs after it leaves the refinery are borne by the purchaser. If the customer does not operate a line to the refinery, it pays the carrier for the haul

from the refinery to a junction on its own line. The tax on the occupation for this class of sales for April, 1940, was $239.33.

Sales in Class B cover those made under written orders or contracts which expressly provide that title will pass to the purchaser upon the loading of the products into cars at the refinery. Invoice is attached to the bill of lading and payment is made to plaintiff at one of its offices in this State. The tax on the occupation for this class of sales for April, 1940, was $356.08.

Sales in Class C are made to customers who are engaged in business in this State and who place written or verbal orders with the plaintiff without express stipulation as to the place where the title will pass. Following a long-established business usage with such purchasers, the parties understand that the purchase is made for delivery f.o.b. one of plaintiff's out-of-the-State refineries and that all transportation charges are to be borne by the purchaser. The amount involved in this class for April, 1940, was $784.41.

Class D is the same as Class C except that after the verbal order is given it is followed by written confirmation which expressly provides that the title is to pass from plaintiff to the purchaser when the product is loaded on car or in tank at the refinery. The tax paid on this class was $6.77.

Class E includes sales that would be included in Classes B or C, except for the distinguishing feature that plaintiff advances the transportation charges to the carrier, and the purchaser later reimburses plaintiff for the amount paid. The tax paid in April, 1940, on this class was $668.71.

All sales, regardless of class, were on orders or contracts placed with, and accepted by, plaintiff at some one of its offices located in this State. All the products sold were outside the State when the sale was made and it will be noted that the sales in all classes were f.o.b. an out-of-State

refinery. After an order was received and accepted, plaintiff sent it to one of its out-of-State refineries with directions as to loading and billing to the customer, which was done under the circumstances related.

Prior to the decisions in *McGoldrick* v. *Berwind-White Coal Mining Co.* 309 U. S. 33, 84 L. ed. 565; *McGoldrick* v. *DuGrenier*, 309 U. S. 70, 84 L. ed. 584, and *Graybar Electric Co.* v. *Curry*, 308 U. S. 513, 84 L. ed. 530, the rules of the Department made no provision for the taxing of occupations that were engaged in selling property that would, in the course of the sale, move in the stream of interstate commerce. In March, 1940, Rule 5 was amended, effective April 1, to include such occupations. However, there is no need of discussing the provisions of the rules, for both parties have briefed the case in recognition of the principle that the rules of the Department can neither limit nor extend the scope of the statute. (*Mahon* v. *Nudelman*, 377 Ill. 331, *Mallen Co.* v. *Department of Finance*, 372 Ill. 598.) If a tax is to be imposed upon plaintiff, the authority and power to make such an assessment must be found in the language of the statute.

It is stated in plaintiff's brief that the suggested possibilities of constitutional questions arising under the commerce clause of the Federal constitution and the due-process clauses of the State and Federal constitutions were not directly raised by the pleadings and are not involved on this appeal. By excluding consideration of such questions there is little in the *McGoldrick* and kindred cases that is applicable to the question presented, for the opinions in those cases are devoted to a discussion of questions coming under such constitutional provisions.

If there is a tax liability for the sales made in April, 1940, as reported by plaintiff, then the authority for imposing it must be found in the section then in force, which was the act as amended in 1939. (Ill. Rev. Stat. 1939, chap. 120, par. 441.) The section was amended in 1941,

effective July 1. The change in the wording of the section furnishes the basis for part of the contentions made. Since the complaint and the temporary injunction apply not only to the taxes paid under protest for April, 1940, but to taxes similarly paid in the months subsequent thereto, thus extending into the time when the 1941 amendment became effective, it appears that to properly determine plaintiff's tax liability under the two acts it is necessary to take July 1, 1941, the effective date of the latter amendment, as the dividing point.

Section 2 (par. 441,) as amended in 1939, provided: "A tax is imposed upon persons engaged in the business of selling tangible personal property at retail in this State at the rate of three per cent (3%) of the gross receipts from such sales in this State of tangible personal property made in the course of such business prior to July 1, 1941," etc. Paragraph 1 of section 1 defines "sale at retail" to mean "any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration."

An analysis of section 2 as amended in 1939, as to subject matter, readily divides it into two parts, the first by which the tax is assessed on persons engaged in certain occupations and the second which fixes the rate of levy. In the 1939 amendment both of these divisions of the statute contained the words "in this State" and the meaning to be given to those two phrases controls the decision in this case. The first part of the section imposes the tax and prescribes the factors that must be present before a tax can be levied. They may be summarized: (1) that there shall be a person; (2) that such person shall be engaged in an occupation; (3) that the occupation shall be in selling tangible personal property, and (4) that such sales shall be at retail. The word "person" as used in this section is defined in section 1, and plaintiff is a person

within the meaning of that definition. It is also obvious that the sales made by plaintiff come within the definition of sales at retail as that term is defined in section 1. Thus far consideration has been given to the factors that make the occupation subject to tax without consideration as to the effect to be given the meaning of the words "in this State."

The sales which plaintiff made were negotiated under terms by which delivery and transfer of title occurred in another State, and plaintiff takes this fact as a basis for contending that the words "in this State" refer to sales at retail and says that since such term as defined in paragraph 1 means a completed sale, including delivery and transfer of title, there is no taxable liability since the sales in question were not completed in this State. We cannot agree with such interpretation of the statute. The purpose of the part of the statute which precedes the words "in this State" is to prescribe the character of an occupation upon which a tax may be imposed, and we conclude that the words "in this State" refer to the occupation rather than to the sales. If the legislature had intended that the sales at retail, to constitute an occupation, should be limited to those occurring within the State, it would undoubtedly have inserted such limitation in the definition that is given in section 1. We conclude that the words "in this State" in the part of the statute under consideration refer to the locale where the person who is to be subjected to the tax shall carry on the occupation.

Consideration will now be given that part of section 2, as amended in 1939, which fixes the tax "at the rate of three per cent (3%) of the gross receipts from such sales in this State of tangible personal property," and particularly as to the meaning of the words "such sales in this State." The words "such sales" relate to the sales previously referred to and defined in the act. The term "such sales" means the sales that were made by the person en-

gaged in the occupation upon which the tax is to be imposed. The gross receipts from "such sales" furnish the measure by which the tax is computed. When the words "such sales in this State" are considered together it is evident that the words "in this State" are used as a limitation as to where such sales must occur. They mean that the tax rate shall be levied upon the sales made in this State on the business of the taxable occupation which is located in the State. Under the views expressed, plaintiff was not subject to a tax on the occupation described under the 1939 amendment, for the reason that the sales it made were not consummated by the transfer of title in this State and, therefore, the gross receipts from such sales are not available as a measure for levying the tax.

The amendment of 1941 re-enacted the statute as it previously existed except that the words "in this State," where they appear the second time, were omitted. What has been said as to the construction of that part of the act which preceded the provision which fixed the rate of tax is applicable to the act as amended in 1941. The words "such sales" remain in the statute and refer to the sales made in the business of the occupation described in the preceding part of the section and as defined in section 1 of the act. The omission of the words "in this State" in the amendatory act removes the limitation, as to location where the sales must occur, that the gross receipts can be used for computing the tax. The evident purpose of the amendment was to remove this limitation and to leave the tax to be measured upon the gross receipts of all sales regardless of where the sales were made, provided that they were made in the business of an occupation located within this State. In some of the companion cases the question is raised as to what constitutes an occupation or business in this State which may be subject to the tax, but that question is not involved in the instant case. The business which plaintiff conducted in this State included the taking of

144

orders, the making of contracts, agreeing upon terms, receiving the payment and all other elements of the sale except delivery and transfer of title. This is sufficient to constitute it an occupation or business engaged in in this State. The result of the conclusions reached exempts plaintiff from a tax under the 1939 amendment but subjects it to a tax under the 1941 amendment.

For the reasons assigned, the decree is reversed and the cause remanded with directions to proceed in accordance with the views expressed.

*Reversed and remanded, with directions.*