# ILLINOIS OFFICIAL REPORTS

## Supreme Court

*Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130

| | |
|---|---|
| Caption in Supreme Court: | HARTNEY FUEL OIL COMPANY *et al.*, Appellees, v. BRIAN A. HAMER, Director of the Illinois Department of Revenue, *et al.*, Appellants. |
| Docket Nos. | 115130, 115131 cons. |
| Filed | November 21, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Illinois' statutes and case law provide that the situs for imposition of retailers' occupation taxes is properly determined by a fact-intensive inquiry as to where the "business of selling" takes place, rather than by a bright-line test as to where purchase orders are accepted, as promulgated in invalid administrative regulations, but a taxpayer which relied on them in structuring its business and was later asked to pay more and did so under protest was entitled to a rebate. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Putnam County, the Hon. Scott A. Shore, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part. |

Counsel on Appeal

Lisa Madigan, Attorney General, of Springfield (Michael S. Scodro, Solicitor General, Jane Elinor Notz, Deputy Solicitor General, and Paul Berks, Assistant Attorney General, of Chicago, of counsel), for appellants Brian A. Hamer, Director, Illinois Department of Revenue, and Dan Rutherford, Treasurer of Illinois.

Timothy L. Bertschy, Brad A. Elward, and Maura Yusof, of Heyl, Royster, Voelker & Allen, Judith Kolman, of Rosenthal, Murphey, Coblentz & Donahue, Gino L. DiVito, Karina Zabicki DeHayes, Daniel I. Konieczny, John M. Fitzgerald and John J. Barber, of Tabet, DiVito & Rothstein LLC, and Anita Alvarez, State's Attorney, all of Chicago (Patrick T. Driscoll, Jr., Allison C. Marshall and Kent S. Ray, Assistant State's Attorneys, of counsel), for intervenors-appellants.

Robert N. Hochman, Scott J. Heyman and Charles K. Schafer, of Sidley Austin, LLP, of Chicago, and Michael T. Reagan, of Ottawa, for appellee Hartney Fuel Oil Company.

David A. Rolf and Todd M. Turner, of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellees Board of Commissioners of Putnam County and Board of Trustees of the Village of Mark.

Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon and Weston Hanscom, of counsel), for *amicus curiae* City of Chicago.

Sonni Choi Williams, Interim Corporate Counsel, of Peoria, for *amici curiae* City of Peoria and County of Peoria.

Steven D. Mahrt, Corporation Counsel, of Normal, for *amicus curiae* Town of Normal.

Jack M. Siegel, of Holland & Knight, LLP, of Chicago, for *amicus curiae* Village of Schaumburg.

Steven E. Wermcrantz, of Springfield, for *amici curiae* Illinois Petroleum Marketers Association and Illinois Association of Convenience Stores.

Mark P. Rotatori, Brian J. Murray and Meghan E. Sweeney, of Jones Day, of Chicago, for *amici curiae* Taxpayers' Federation of Illinois and Illinois Retail Merchants Association.

Justices                 CHIEF JUSTICE GARMAN delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1     This case concerns the proper situs for tax liability under retail occupation taxes arising under three Illinois statutes: the Home Rule County Retailers' Occupation Tax Law, the Home Rule Municipal Retailers' Occupation Tax Act, and the Regional Transportation Authority Act. The Illinois Department of Revenue determined through audit that plaintiff Hartney Fuel Oil Company's sales at retail were attributable to the company's Forest View office, rather than the Village of Mark location reported by the company. The change in location made Hartney subject to retail occupation taxes imposed by the Village of Forest View, Cook County, and the Regional Transportation Authority. The Department issued a notice of tax liability, which Hartney paid under protest. Hartney then filed for relief in the circuit court of Putnam County.

¶ 2     The circuit court of Putnam County consolidated with this case a declaratory judgment action by the board of commissioners of Putnam County and board of trustees of the Village of Mark, in which those local governments sought to be declared the proper situs of taxation. The circuit court also allowed the board of trustees of the Village of Forest View, the County of Cook, and the Regional Transportation Authority to intervene as defendants. The circuit court, interpreting the Department of Revenue's regulations for the three taxes, found for the plaintiffs. The appellate court affirmed that decision. 2012 IL App (3d) 110144.

¶ 3     We granted defendants' petitions for leave to appeal pursuant to Supreme Court Rule 315 (eff. Feb. 26, 2010). Pursuant to Supreme Court Rule 345 (eff. Sept. 20, 2010), we have permitted the Taxpayers' Federation of Illinois and the Illinois Retail Merchants Association to file a brief *amicus curiae* on behalf of the plaintiffs. We have also permitted the Village of Schaumburg, the City of Chicago, the City of Peoria, the Town of Normal, and the County of Peoria to file a brief *amicus curiae* on behalf of the defendants.

¶ 4                          BACKGROUND

¶ 5     Hartney Fuel Oil Company is a retailer of fuel oil, and during all times relevant to this litigation its home office was in Forest View, Illinois. From its Forest View office, Hartney

would set fuel prices, cultivate customer relationships, and handle administrative tasks like billing and accounting. Each night, Hartney staff there would communicate fuel prices for the following day to prospective customers. The Forest View home office also contained a jointly owned but separately incorporated transportation company, Energy Transport, Inc. Energy Transport served as a common carrier, filling many of Hartney's fuel orders.

¶ 6    In addition to its Forest View office, Hartney had a "sales" office, located elsewhere in the state for tax planning purposes. The sales office had no direct employee of Hartney; Hartney would contract with a local business for a clerk to take fuel orders. Hartney established its first separate sales office in Elmhurst, later moving it to Burr Ridge, then to Peru, and then to Mark, due to prevailing local tax conditions. The local business would provide the services of one of its own employees to receive Hartney's orders via phone; Hartney would pay the local business a flat rate. During the relevant time period, Hartney paid Putnam County Painting, a commercial painting business, $1,000 per month for a nonexclusive lease of 200 square feet and the services of a clerk.

¶ 7    Hartney had two varieties of fuel contracts, long-term requirements contracts and daily orders. Customers would call the Mark office to place their daily orders. Any customer who called the Forest View office to place an order was directed to call the Mark office. The clerk in Mark would check a list of customers with approval to order on credit. Orders from those who were not credit-approved would be rejected. For customers who were preapproved, the clerk would call Energy Transport at the Forest View office, and Energy Transport would deliver the fuel. No confirmation of the order by Hartney's Forest View office was required. Testimony at trial and the conclusion of the circuit court were that the clerk's word was binding on Hartney.

¶ 8    Long-term requirements contracts were negotiated by Hartney's president, who would instruct the customer to sign the contract and return it by mail to the Mark office. If Hartney's president had not yet signed the contract, he would travel to the Mark office to sign it. The executed contracts were stored at the Mark office, with copies sent to the customer and Hartney's Forest View office. These contracts were generally on a "keep full" basis. Energy Transport or another common carrier would monitor and keep full the customer's tanks, notifying Hartney to invoice the long-term contract customer for any fuel delivered. The keep-full arrangements did not require any intervention by the Mark office.

¶ 9    By structuring its sales in this way, Hartney hoped to avoid liability for retail occupation taxes of Cook County, the Village of Forest View, and the Regional Transportation Authority. Such taxes are imposed pursuant to the Home Rule County Retailers' Occupation Tax Law (55 ILCS 5/5-1006 (West 2012)), the Home Rule Municipal Retailers' Occupation Tax Act (65 ILCS 5/8-11-1 (West 2012)), and the Regional Transportation Authority Act (70 ILCS 3615/4.03 (West 2012)). Hartney's interpretation of the law was that the relevant regulations set a bright-line test: where the purchase order is accepted for a sale at retail in Illinois, and the purchaser takes delivery in Illinois, the sale has its situs where the seller accepts the purchase order. This view of the situs of sale also meant that Putnam County and the Village of Mark received the portions of the Illinois Retailers' Occupation Tax funds

-4-

designated for county and local government.[1] 35 ILCS 120/3 (West 2012).

¶ 10    The Department of Revenue audited Hartney's selling activity from January 1, 2005, to June 30, 2007, finding the proper situs of selling activity to be Hartney's office in Forest View. The Department calculated retail occupational taxes of Cook County, Forest View, and the Regional Transportation Authority, and sent Hartney a notice of tax liability on September 5, 2008. With interest and penalties, Hartney owed $23,111,939.11.

¶ 11    Hartney paid the assessment and sued for a refund under the State Officers and Employees Money Disposition Act (Protest Monies Act) (30 ILCS 230/1 *et seq.* (West 2008)) in Putnam County circuit court. Putnam County and the Village of Mark joined Hartney in seeking declaratory and injunctive relief to find Mark to be the proper situs of sale, to release the state occupation tax money to Mark and Putnam County, and to release to Hartney the money it paid under protest. Forest View, Cook County, and the Regional Transportation Authority (Local Governments) intervened as defendants.

¶ 12    The circuit court concluded that Hartney had accepted both its long-term sales and daily order sales in the Village of Mark, and that the regulations relevant to each section established a bright-line test for situs of sale: where purchase orders are accepted, tax liability is incurred. The appellate court affirmed.

¶ 13                                  ANALYSIS

¶ 14    The issues presented by this appeal are (1) the legislative intent of the retail occupation tax statutes, and (2) interpretation of the administrative regulations implementing the retail occupation taxes.

¶ 15    Hartney argues, and the courts below found, that the plain language of the regulation establishes a bright-line test for the situs of retail occupation tax liability. The Department argues that such an interpretation is at odds with this court's decisions on the business of selling under the retail occupation tax and with the legislative intent of the Home Rule County Retailers' Occupation Tax Law (55 ILCS 5/5-1006 (West 2012)), the Home Rule Municipal Retailers' Occupation Tax Act (65 ILCS 5/8-11-1 (West 2012)), and the Regional Transportation Authority Act (70 ILCS 3615/4.03 (West 2012)).

¶ 16    This appeal concerns interpretation of statutes and regulations, both questions of law which we review *de novo*. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008). Yet even where review is *de novo*, an agency's interpretation of its regulations and enabling statute are "entitled to substantial weight and deference," given that "agencies make informed judgments on the issues based upon their experience and expertise and serve as an informed source for ascertaining the legislature's intent." *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 387 n.9 (2010).

¶ 17    Factual determinations of a trial court are reviewed under the manifest weight of the

_____

[1] Neither Putnam County nor the Village of Mark imposed its own retail occupation taxes, and each gave Hartney a partial rebate of state retail occupation tax funds received, giving Hartney an even lower effective tax rate for sales with situs there.

evidence standard and will be reversed only where the "opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence." *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 544 (2007). The parties disagree about the legal significance of a number of facts in issue but do not dispute the facts themselves.

¶ 18    This dispute arises under the Protest Monies Act (30 ILCS 230/1 (West 2008)). A taxpayer willing to pay an assessment under protest may pay assessed taxes and file suit for a refund in circuit court, thereby avoiding the requirement under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2008)) to exhaust all administrative remedies before seeking judicial review.[2]

¶ 19                    The Local Retail Occupation Tax Acts

¶ 20    The three statutes at issue (the local ROT Acts) allow home rule county and municipal governments and the Regional Transportation Authority (RTA) to impose a retail occupation tax "upon all persons engaged in the business of selling tangible personal property" at retail within the county, municipality, or metropolitan region. 55 ILCS 5/5-1006 (West 2012); 65 ILCS 5/8-11-1 (West 2012); 70 ILCS 3615/4.03(e) (West 2012). The Village of Forest View is within Cook County and within the metropolitan region of the RTA. Each of the Local Governments has imposed its own retail occupation tax.

¶ 21    The local ROT Acts give information about the tax rate to be imposed and types of products subject to the tax, but—with the exception of coal and other mineral extraction—they do not offer substantial guidance on the proper situs of taxation. See, *e.g.*, 55 ILCS 5/5-1106 (West 2012). For guidance on the proper situs of retail occupation tax under the local ROT Acts, one must turn to the regulations. The "Jurisdictional Questions" regulations for the county, municipality, and RTA retail occupation taxes are largely identical, with only minor differences in layout. See 86 Ill. Adm. Code 220.115 (2000); 86 Ill. Adm. Code 270.115 (2000); 86 Ill. Adm. Code 320.115 (2000). For simplicity, we refer to the Home Rule County Retailers' Occupation Tax Law regulations (86 Ill. Adm. Code 220.115 (2000)).

¶ 22    The circuit court and appellate court both found the regulations to establish a bright-line test: "If the purchase order is accepted at the seller's place of business within the county, municipality and/or metropolitan region; ROT liability is fixed in that respective county, municipality and/or metropolitan region." 2012 IL App (3d) 110144, ¶ 53. The Department and Local Governments argue that the regulations instead present a fact-intensive inquiry, looking to the totality of the circumstances. They argue that only a totality-of-the-circumstances view accords with the legislative intent of the local ROT Acts and this court's prior interpretation of the "business of selling" under the local ROT Acts. See, *e.g.*, *Ex-Cell-O Corp. v. McKibbin*, 383 Ill. 316 (1943).

---

[2]The appellate court noted that this court has not yet identified the standards to apply to a specific claim under the Protest Monies Act. 2012 IL App (3d) 110144, ¶ 32. However, the parties are in apparent agreement that the circuit court's standard was appropriate, and no party has briefed or argued the issue for this court's review. We do not define a standard at this time.

¶ 23    We look first to interpretation of the statutes, beginning with plain language.

¶ 24                        Interpretation of the Statutes

¶ 25    When interpreting a statute, the primary objective is to give effect to the legislature's intent, which is best indicated by the plain and ordinary language of the statute itself. *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23. Words should be given their plain and obvious meaning unless the legislative act changes that meaning. *Svithiod Singing Club v. McKibbin*, 381 Ill. 194, 197 (1942). In giving meaning to the words and clauses of a statute, no part should be rendered superfluous. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 26. Statutory provisions should be read in concert and harmonized. *People v. Rinehart*, 2012 IL 111719, ¶ 26. Where a statute is enacted after a judicial opinion is published, we presume the legislature acted with knowledge of the case law. *In re Marriage of Mathis*, 2012 IL 113496, ¶ 25. If further construction of a statute is necessary, a court may consider similar and related enactments. *In re Shelby R.*, 2013 IL 114994, ¶ 39. Courts weighing legislative intent also consider the "object to be attained, or the evil to be remedied by the act." *Svithiod Singing Club*, 381 Ill. at 198. A retail occupation tax must be given a "practical and common-sense construction." *Automatic Voting Machine Corp. v. Daley*, 409 Ill. 438, 447 (1951).

¶ 26    The principal question in this appeal is determination of the proper situs for the "business of selling" to be taxed. To interpret a statute, we first look to the plain language of that statute. Neither party has briefed or argued the plain language of the local ROT Acts, aside from pointing to this court's prior decisions on the meaning of the "business of selling."

¶ 27    The Home Rule County Retailers' Tax Law permits home rule counties to impose "a tax upon all persons engaged in the business of selling tangible personal property *** at retail in the county." 55 ILCS 5/5-1006 (West 2012). The tax is to be imposed in 1/4% increments, and may only be imposed at the same rate as a service occupation tax imposed by the county. A number of different types of products are exempted from home rule county taxation. Sellers are permitted to recover the cost of such taxes by stating the tax in a separate charge, along with other sales taxes. The Department of Revenue is charged with collection and enforcement. Apart from the words "at retail in the county," the statute contains little guidance on how a sale is properly located for tax purposes. The only prescription for situs of sale in the statute governs sales of coal and other minerals: "For the purpose of determining the local governmental unit whose tax is applicable, a retail sale by a producer of coal or other mineral mined in Illinois is a sale at retail at the place where the coal or other mineral mined in Illinois is extracted from the earth." *Id.* The Home Rule Municipal Retailers' Occupation Tax Act is identical in these provisions. 65 ILCS 5/8-11-1 (West 2012). Neither Act contains an explicit statement of legislative purpose.

¶ 28    The "Taxes" section of the Regional Transportation Authority Act allows the Board of Directors to impose a retail occupation tax upon "all persons engaged in the business of selling tangible personal property at retail in the metropolitan region." 70 ILCS 3615/4.03(e) (West 2012). The "Taxes" section prescribes applicable tax rates for certain products in Cook County and prescribes a separate tax rate for Du Page, Kane, Lake, McHenry, and Will

Counties. Similarly to the home rule county and municipal ROT Acts, the "Taxes" section of the RTA Act requires the Board to enact a parallel service occupation tax and title tax if it enacts a retail occupation tax. Sellers under the RTA Act are likewise permitted to recover the cost of such taxes from buyers by stating the tax separately. The RTA Act similarly lacks any definition for situs of sale aside from sales of coal and other minerals. That provision is virtually identical to the one contained in the home rule county and municipal ROT Acts. The RTA Act does contain statements of legislative purpose, describing public transportation as an "essential public purpose." 70 ILCS 3615/1.02(a)(i) (West 2012).

> "There is an urgent need to reform and continue a unit of local government to assure the proper management of public transportation and to receive and distribute State or federal operating assistance and to raise and distribute revenues for local operating assistance. System generated revenues are not adequate for such service and a public need exists to provide for, aid and assist public transportation in the northeastern area of the State, consisting of Cook, DuPage, Kane, Lake, McHenry and Will Counties." *Id.*

¶ 29 Thus, the plain meaning of these statutes is to allow home rule counties, home rule municipalities, and the Regional Transportation Authority to impose retail occupation taxes on persons engaged in the business of selling. In the context of the Regional Transportation Authority Act, such taxes are to be collected in part because the revenues generated by public transportation are insufficient to support that "essential public purpose" in Cook, Du Page, Kane, Lake, McHenry, and Will Counties. However, the plain language of the statutes is sparse in definition for where the "business of selling" takes place. This court's prior interpretations of the "business of selling" in a closely related tax are instructive.

¶ 30 We have interpreted the plain meaning of a tax on the business of selling under the Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq.* (West 2012)), to be a tax on the occupation of retail selling, and not sales themselves. *Standard Oil Co. v. Department of Finance*, 383 Ill. 136, 142 (1943). Thus, the location of the business of selling inside or outside the state controls, and not the location of transfer of title. *Id.* The business of selling itself is

> "the composite of many activities extending from the preparation for, and the obtaining of, orders for goods to the final consummation of the sale by the passing of title and payment of the purchase price. It is obvious that such activities are as varied as the methods which men select to carry on retail business and it is therefore not possible to prescribe by definition which of the many activities must take place in Illinois to constitute it an occupation conducted in this State. Except for a general classification that might be made of the many retail occupations, it is necessary to determine each case according to the facts which reveal the method by which the business is conducted." *Ex-Cell-O Corp.*, 383 Ill. at 321-22.

Under this "composite of many activities" view, a sales agent, limited to soliciting orders and unable to bind the selling company in any way, did not constitute a person engaged in the business of selling within the state. *Id.* at 322-23.

¶ 31 The business of selling is distinct from the business of mere solicitation, as the Retailers'

Occupation Tax Act did not authorize a tax on mere solicitation. *Allis-Chalmers Manufacturing Co. v. Wright*, 383 Ill. 363, 366 (1943). In parsing the many activities making up the business of selling, some combinations of activities within the state are insufficient for the retail occupation tax to apply. *Automatic Voting Machine Corp.*, 409 Ill. at 447 (describing imposition of the ROT as a question in which "each case, of necessity, rests completely and entirely on the foundation of its own facts"). For example, "promotional work, delivery of bids, transfer of title, delivery of machines and servicing" within the state have been held insufficient where bid preparation, contract execution, manufacturing, and accounting took place outside the state. *Id.* at 451-52. In determining whether the business of selling has taken place in the state, courts may look through the form of a putatively interstate transaction to its substance, in determining whether enough of the business of selling took place within the state to subject it to the retail occupation tax. *Marshall & Huschart Machinery Co. v. Department of Revenue*, 18 Ill. 2d 496, 501 (1960).

¶ 32    In sum, there is a wealth of precedent that, under the Retailers' Occupation Tax Act, whether the taxable "business of selling" is being carried on requires a fact-intensive inquiry, to determine "each case according to the facts." See *Ex-Cell-O*, 383 Ill. at 321-22. We next examine whether the legislature intended the "business of selling" under the Home Rule County Retailers' Occupation Tax Law, the Home Rule Municipal Retailer's Occupation Tax Law, and the Regional Transportation Authority Act to be judged under the same fact-sensitive approach.

¶ 33    The local ROT Acts do not, by their terms, contain any explicit link to or distinction from the Retailers' Occupation Tax Act. Nonetheless, similar and related enactments provide guidance to the meaning of a potentially unclear term. *In re Shelby R.*, 2013 IL 114994, ¶ 39. The Retailers' Occupation Tax Act and the local ROT Acts at issue use near-identical language to describe the target of taxation: "persons engaged in the business of selling at retail tangible personal property" (35 ILCS 120/2 (West 2012) (Retailers' Occupation Tax Act)); and "all persons engaged in the business of selling tangible personal property *** at retail" (55 ILCS 5/5-1006 (West 2012) (Home Rule County Retailers' Occupation Tax Law)). We conclude the General Assembly did not create this parallelism casually or accidentally. The 1943 *Ex-Cell-O* decision predates the local ROT Acts and made clear this court's interpretation of "the business of selling at retail." The legislature's decision to use this equivalent language—and retain it through many subsequent statutory amendments—signals its embrace of the *Ex-Cell-O* "composite of many activities" exposition. We conclude it applies to the business of selling in the local ROT Acts.

¶ 34    Having concluded the plain language of the "business of selling" requires a fact-intensive inquiry under the local ROT Acts, we find the plain language of the statute does not fully reveal legislative intent as to the situs of taxation. Accordingly, we turn to other tools of construction. This court has previously considered the legislative intent of the Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq.* (West 2012)), finding the General Assembly "sought to tax the business of selling at retail, to arrive at some method of relieving property from direct taxation and to place the burden upon that class of business which not only enjoyed the greater part of governmental protection but which benefited by being conducted under that protection." *Svithiod Singing Club*, 381 Ill. at 199. We again stated the statutory

intent to link retailer consumption of government services to retail occupation taxation under the Retailers' Occupation Tax Act in *Valier Coal Co. v. Department of Revenue*, 11 Ill. 2d 402, 406-07 (1957).

¶ 35    Moving from the state to local level, this court applied the same rationale to predecessors of the municipal and county retail occupation taxes in *Gilligan v. Korzen*, 56 Ill. 2d 387, 391-92 (1974) (stating the General Assembly enacted prior versions of the municipal and county ROT Acts to account for government services provided). Accordingly, we again find the legislative intent of the Home Rule County Retailers' Occupation Tax Law, the Home Rule Municipal Retailer's Occupation Tax Act, and the retail occupation tax provisions of the Regional Transportation Authority Act is to allow local governments to impose a tax on "persons engaged in the business of selling tangible personal property" at retail within their jurisdictions, in order to relieve some tax burden that might otherwise be placed on property, in favor of placing it on retailers enjoying governmental services. 55 ILCS 5/5-1006 (West 2012); 65 ILCS 5/8-11-1 (West 2012); 70 ILCS 3615/4.03(e) (West 2012).

¶ 36    Taking these two conclusions about the plain meaning of the business of selling and legislative intent together, then, the local ROT Acts were enacted to allow local jurisdictions to tax the composite of selling activities taking place within their jurisdictions, collecting taxes in relation to services enjoyed by the retailer. Having concluded the "business of selling" under the local ROT Acts is a fact-intensive "composite of many activities" consonant with our holding in *Ex-Cell-O*, we now consider whether the Department's regulations are consistent with the statute.


¶ 37                        Interpretation of the Regulations

¶ 38    Administrative regulations have the force and effect of law and are interpreted with the same canons as statutes. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008). Additionally, administrative agencies enjoy wide latitude in adopting regulations reasonably necessary to perform the agency's statutory duty. *Julie Q. v. Department of Children & Family Services*, 2013 IL 113783, ¶ 28. Such regulations carry a presumption of validity. *People v. Molnar*, 222 Ill. 2d 495, 508 (2006). However, regulations may not broaden or narrow a statute's intended scope of taxation. *Ex-Cell-O*, 383 Ill. at 320. Regulations that are inconsistent with the statute under which they are adopted will be held invalid. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 366 (2009).

¶ 39    The regulations governing situs of taxation for the local ROT Acts each appear under the heading "Jurisdictional Questions" and are virtually identical. See 86 Ill. Adm. Code 220.115 (home rule counties); 86 Ill. Adm. Code 270.115 (home rule municipalities); 86 Ill. Adm. Code 320.115 (RTA). For simplicity, we focus on the Home Rule County Retailers' Occupation Tax Law regulations (86 Ill. Adm. Code 220.115).

¶ 40    The Department argues the local ROT Act regulation defining the situs of tax must be read in light of the statutory intent. Read in this light, it argues, the regulation sets up a totality-of-the-circumstances inquiry. Hartney argues that the regulation is instead written to address numerous possible fact scenarios in an uncertain field—speaking with certainty in scenarios where the outcome is known and providing guidance as to a likely outcome in

other scenarios. The interpretive dispute begins in 86 Ill. Adm. Code 220.115(b):

"b) Mere Solicitation of Orders Not Doing Business

1) For a seller to incur Home Rule County Retailers' Occupation Tax liability in a given county, the sale must be made in the course of the seller's engaging in the retail business within that county. In other words, enough of the selling activity must occur within the home rule county to justify concluding that the seller is engaged in business within the home rule county with respect to that sale.

2) For example, the Supreme Court has held the mere solicitation and receipt of orders within a taxing jurisdiction (the State), where the orders were subject to acceptance outside the taxing jurisdiction and title passed outside the jurisdiction, with the goods being shipped from outside the jurisdiction to the purchaser in the jurisdiction, did not constitute engaging in the business of selling within the jurisdiction. This conclusion was reached independently of any question of interstate commerce and so would apply to a home rule county as the taxing jurisdiction as much as to the State as the taxing jurisdiction." 86 Ill. Adm. Code 220.115(b).

¶ 41    The Department argues that subsection (b) incorporates our holdings on the meaning of the "business of selling" through its reference to "the seller's engaging in the retail business within that county." The Department further argues that subsection (b)(1)'s requirement that "enough of the selling activity must occur" within the taxing jurisdiction invokes this court's view of sales under retail occupation taxes as the composite of many activities. The appellate court found, and Hartney argues, that subsections (b)(1) and (b)(2) instead set up a threshold inquiry, analyzing whether enough of the sales activity takes place in the taxing jurisdiction that it might be made subject to the retail occupation tax there. In Hartney's view, this first inquiry would narrow the field from various jurisdictions having some contact with the sale to those with "enough" sales activity; subsequent sections either define or provide guidance as to which of them will enjoy tax revenues from the retailer.[3] Specifically, Hartney argues that subsection (c)(1) conclusively establishes its tax situs at the location of purchase order acceptance. Subsection (c)(1) states:

"c) Seller's Acceptance of Order

1) Without attempting to anticipate every kind of fact situation that may arise in this connection, it is the Department's opinion, in general, that the seller's acceptance of the purchase order or other contracting action in the making of the sales contract is the most important single factor in the occupation of selling. If the purchase order is accepted at the seller's place of business within the county or by someone who is working out of that place of business and who does not conduct the business of selling elsewhere within the meaning of subsections (g) and (h) of this Section, or if a purchase order that is an acceptance of the seller's complete and unconditional offer to sell is received by the seller's place of

_____

[3]No party has argued, and we do not consider, any claim that the Department might impose the same tax in more than one location for one sale.

-11-

business within the home rule county or by someone working out of that place of business, the seller incurs Home Rule County Retailers' Occupation Tax liability in that home rule county if the sale is at retail and the purchaser receives the physical possession of the property in Illinois. The Department will assume that the seller has accepted the purchase order at the place of business at which the seller receives the purchase order from the purchaser in the absence of clear proof to the contrary." 86 Ill. Adm. Code 220.115(c)(1).

The Department argues that Hartney's interpretation renders subsection (b)(1) meaningless, as there would be no reason for a threshold finding of which jurisdictions may be able to tax the seller if another subsection conclusively establishes *which* jurisdiction will tax the seller. For the reasons stated below, we agree with the appellate court's and Hartney's view.

¶ 42    The Department is correct in looking to *Ex-Cell-O* to interpret subsection (b), as it references the inquiry contemplated in that case. In *Ex-Cell-O*, we said:

"An occupation, the business of which is to sell tangible personal property at retail, is the composite of many activities extending from the preparation for, and the obtaining of, orders for goods to the final consummation of the sale by the passing of title and payment of the purchase price. It is obvious that such activities are as varied as the methods which men select to carry on retail business and it is therefore not possible to prescribe by definition which of the many activities must take place in Illinois to constitute it an occupation conducted in this State. Except for a general classification that might be made of the many retail occupations, it is necessary to determine each case according to the facts which reveal the method by which the business is conducted." *Ex-Cell-O*, 383 Ill. at 321-22.

We are persuaded that subsection (b)(1) makes reference to "the composite of many activities" in *Ex-Cell-O*, and subsection (b)(2) references that case and its progeny directly. But one key *Ex-Cell-O* concept is notably absent from the regulation: any explicit requirement to "determine each case according to the facts which reveal the method by which the business is conducted." *Id.* at 322.

¶ 43    This absence is significant because we now confront a question not present in *Ex-Cell-O*. There, the question before the court was whether a retailer's activity carried on within the state was sufficient to constitute the business of selling under the Retailers' Occupation Tax Act. *Id.* At no point did the *Ex-Cell-O* court weigh which state had the majority of the business of selling incident to the sales. Unlike the case at bar, there were no competing claims between taxing jurisdictions for the enjoyment of tax funds. In short, the local ROT Acts present a question of allocation not present in *Ex-Cell-O*. It is true that, under subsection (b) as well as in *Ex-Cell-O*, enough of the selling activity must take place within the taxing jurisdiction to constitute the business of selling there. After that threshold inquiry, however, the Department must further determine *which* of the jurisdictions satisfying this test will be deemed the situs of taxation and will enjoy the tax revenues.

¶ 44    The Department argues that this threshold inquiry is meaningless if a subsequent section

affirmatively defines tax situs.[4] This is not so, for reasons we outline in discussing subsection (c). Subsection (b), standing alone, does not establish a fact-intensive test for the question of tax situs. For the regulation to mandate a fact-intensive test, such test must originate in a subsequent subsection or be clear from subsections read together.

¶ 45 Subsection (c), however, does much to undermine the Department's view that the regulation embodies a totality-of-the-circumstances inquiry. It begins:

> "c) Seller's Acceptance of Order
>
>  1) Without attempting to anticipate every kind of fact situation that may arise in this connection, it is the Department's opinion, in general, that the seller's acceptance of the purchase order or other contracting action in the making of the sales contract is the most important single factor in the occupation of selling. If the purchase order is accepted at the seller's place of business within the county or by someone who is working out of that place of business and who does not conduct the business of selling elsewhere within the meaning of subsections (g) and (h) of this Section, or if a purchase order that is an acceptance of the seller's complete and unconditional offer to sell is received by the seller's place of business within the home rule county or by someone working out of that place of business, the seller incurs Home Rule County Retailers' Occupation Tax liability in that home rule county if the sale is at retail and the purchaser receives the physical possession of the property in Illinois. The Department will assume that the seller has accepted the purchase order at the place of business at which the seller receives the purchase order from the purchaser in the absence of clear proof to the contrary." 86 Ill. Adm. Code 220.115(c)(1).

Subsection (c)(1) has three sentences, and the meaning of each of these sentences must be considered in light of the others. The first sentence states the Department's opinion that the seller's acceptance of purchase order is the "most important single factor in the occupation of selling." For the purpose of discussion, we refer to this as the "opinion" sentence. The next sentence outlines four occurrences of purchase order acceptance and two conditions, under which the seller incurs tax liability. For the purpose of discussion, we refer to this as the "seller incurs" sentence. Subsection (c)(1) concludes with a presumption about the location of purchase order acceptance.

¶ 46 The "opinion" sentence, standing alone, could be viewed to contemplate a totality-of-the-circumstances test. "Without attempting to anticipate every kind of fact situation that may arise in this connection, it is the Department's opinion, in general, that the seller's acceptance of the purchase order or other contracting action in the making of the sales contract is the most important single factor in the occupation of selling." *Id.* The phrase "[w]ithout attempting to anticipate every kind of fact situation that may arise" suggests a nuanced inquiry. "[I]t is the Department's opinion, in general," additionally suggests that other facts

---

[4]The Department also argues that the appellate court erroneously considered subsections (b)(1) and (b)(2) to make up a jurisdictional provision. In fact, the appellate court said this inquiry was "analogous" to minimum contacts in personal jurisdiction. 2012 IL App (3d) 110144, ¶¶ 43-44.

may control. These two phrases significantly temper the impact of "the seller's acceptance of the purchase order or other contracting action in the making of the sales contract is the most important single factor in the occupation of selling." That purchase order acceptance is the "most important *single* factor" (emphasis added) likewise implies that other factors might be considered. Once more, however, the regulation has used language that might suggest a totality-of-the-circumstances test, but stops short of establishing one.

¶ 47    On its own, the "opinion" sentence communicates less than it initially appears. First, it communicates that the Department does not try to anticipate every fact scenario that might arise in determining situs of retail occupation taxes, suggesting there may be difficulty in writing a rule that fits every situation. Next, the seller's acceptance of the purchase order is, in general, the most important single factor to locating the business of selling. This sentence might help to establish a totality-of-the-circumstances test, depending on what follows.

¶ 48    But, as counsel for Hartney argues, what follows is not a list of factors that are considered important, or even guidance as to when the acceptance of purchase order might be overcome by other facts. Instead, subsection (c)(1) continues with the certain and definitive "seller incurs" sentence:

> "If the purchase order is accepted at the seller's place of business within the county or by someone who is working out of that place of business and who does not conduct the business of selling elsewhere within the meaning of subsections (g) and (h) of this Section, or if a purchase order that is an acceptance of the seller's complete and unconditional offer to sell is received by the seller's place of business within the home rule county or by someone working out of that place of business, *the seller incurs Home Rule County Retailers' Occupation Tax liability in that home rule county* if the sale is at retail and the purchaser receives the physical possession of the property in Illinois." (Emphasis added.) *Id.*

¶ 49    This sentence begins by stating four mutually exclusive scenarios for the receipt of a purchase order within the jurisdiction: (1) acceptance of a purchase order at the seller's place of business in the county; or (2) acceptance of same by someone working out of that place of business who is not placed elsewhere by the rules for coal or selling from a truck; or (3) receipt at the seller's in-county place of business of a purchase order that is itself acceptance of the seller's complete, unconditional offer to sell; or (4) receipt of same by someone working out of that place of business. The "seller incurs" sentence concludes with two conditions: (1) sale is at retail, and (2) the purchaser receives physical possession within the state. When one of the purchase order scenarios occurs and the two conditions are met, "the seller incurs Home Rule County Retailers' Occupation Tax liability in that home rule county." *Id.* The "seller incurs" sentence contains none of the nuance or hedging present in the "opinion" sentence. It states that when one of these scenarios occurs, and two conditions are satisfied, "seller incurs *** liability in that home rule county." *Id.*

¶ 50    Regulatory provisions, like statutory provisions, must be read in concert and harmonized. See *People v. Rinehart*, 2012 IL 111719, ¶ 26. The "opinion" sentence does not diminish the certainty of the "seller incurs" sentence. Rather, taking the two together renders a meaning that, although it is difficult to craft a rule that properly defines the situs of every sales

arrangement, the place of purchase order acceptance is so important that it will conclusively govern when these conditions are met.

¶ 51 The final sentence, establishing a presumption as to where "the seller has accepted the purchase order," does not provide support for the Department's view that this regulation, in its entirety, creates a totality-of-the-circumstances approach. First, the final sentence does not establish a presumption on tax situs; it establishes a presumption to determine where the purchase order was accepted. Second, because it creates a presumption as to the location of purchase order acceptance, it only bolsters the interpretation that subsection (c)(1) is establishing purchase order as the controlling test where the two conditions are met. Third, it makes clear that the "seller incurs" sentence is not simply a presumption under any totality-of-the-circumstances test contemplated by the "opinion" sentence. In drafting the regulation, the Department knew how to write a presumption, and this presumption as to the location of purchase order acceptance is the only one present in subsection (c)(1).

¶ 52 The following subsection, (c)(2), accords with the view that subsection (c)(1) conclusively establishes purchase order acceptance as the sole factor under certain circumstances, as it conclusively sets tax situs for certain situations when the purchase order is accepted outside the state. Subsection (c) thus contains not one but two definitive situs-setting provisions.

> "(2) If a purchase order is accepted outside this State, but the tangible personal property that is sold is in an inventory of the retailer located within a county at the time of its sale (or is subsequently produced in the county), then delivered in Illinois to the purchaser, the place where the property is located at the time of the sale (or subsequent production in the county) will determine where the seller is engaged in business for Home Rule County Retailers' Occupation Tax purposes with respect to that sale." 86 Ill. Adm. Code 220.115(c)(2).

Like the "seller incurs" sentence in subsection (c)(1), this sentence starts with a scenario: the purchase order being accepted outside the state. It continues by listing two conditions for imposition of the retail occupation tax: (1) that the personal property be in the inventory of the retailer within the county; and (2) that the personal property be delivered in Illinois to the purchaser. Where this scenario occurs under these two conditions, "where the property is located at the time of the sale *** will determine where the seller is engaged in business" for purposes of the retail occupation tax. *Id.*

¶ 53 This subsection also makes clear why subsection (b)(1) must frame a threshold inquiry as to whether enough sales activity is taking place within the jurisdiction to constitute the business of selling under the local ROT Acts. The Department argues that interpreting subsection (b)(1) as a threshold inquiry effectively strips that subsection of meaning, as there would be no reason to determine which jurisdictions may potentially subject the taxpayer to liability, "when the place where the purchase order is accepted will conclusively determine where the taxpayer must pay." Subsection (c)(2), by imposing liability even where a purchase order is accepted outside the state, makes clear that the purchase order does not "conclusively

determine where the taxpayer must pay" under every provision of the regulation.[5] The regulation contemplates that certain sales activities will take place outside the state, and others will take place within the state, but there might still be enough activity within the county to constitute the "business of selling" there. Subsection (c)(2) describes one arrangement that will bring about tax liability within the county by carrying on the business of selling there. If subsection (b)(1) instead framed an overall totality-of-the-circumstances test, subsection (c)(2) would not be written as an affirmative situs-setting rule, but rather as a simple example of one cross-border situation that would still qualify for retail occupation tax liability within the county. Instead, the regulation reads much as the appellate court interpreted it: subsection (b)(1) establishes a threshold inquiry into whether enough sales activity takes place in the local jurisdiction; subsections like (c)(1) and (c)(2) then settle the question of allocation among jurisdictions within the state.

¶ 54    Returning to our conclusion that subsections (c)(1) and (c)(2) contain two statements affirmatively setting a location for tax situs, reading the remainder of the regulation supports this view. Three additional provisions define "the seller's place of business" or "where the seller is engaged in business" (86 Ill. Adm. Code 220.115(c)(1)-(2)) and one defines "the local governmental unit whose tax is applicable" (86 Ill. Adm. Code 220.115(h); 86 Ill. Adm. Code 220.115(e) (long-term and blanket contracts); 86 Ill. Adm. Code 220.115(f) (sales through vending machines); 86 Ill. Adm. Code 220.115(g) (sales from a truck as portable place of business); 86 Ill. Adm. Code 220.115(h) (sales of coal and other minerals)). Each speaks definitively to the object of the inquiry: where is the business of selling being carried on, such that tax is imposed? None is stated as a presumption. None is stated as an example of a likely allocation under a totality-of-the-circumstances test. The regulation thus contains six provisions that affirmatively set the situs of taxation under different scenarios, so long as conditions are met. In sum, the overall structure of the regulation militates against the Department's claim of an overall totality-of-the-circumstances test.

¶ 55    In interpreting the regulation, we turn finally to the Department's argument that because subsection (d) lists other factors like the location of delivery and location where title passes, those "may play a role in determining where a retailer is located." The Department argues that the presence of these factors supports its argument that the regulation crafts a totality-of-the-circumstances test, or there would be no occasion to consider these factors at all. We note, first, that these factors are described in the regulation as being "not necessary" and "not a decisive consideration." 86 Ill. Adm. Code 220.115(d)(1)-(2). Indeed, none of the factors listed in subsection (d) are deemed important in the regulation; the subsection is titled "Some Considerations That Are Not Controlling." *Id.* It is plausible this subsection means to rule out certain types of challenges to liability by taxpayers. It is plausible this subsection means to present factors to deciding situations that fit none of the fact scenarios definitively addressed in subsections (c)(1)-(2), (e), (f), (g), and (h), but which do meet the threshold requirements of subsection (b) so that tax liability may still be incurred. Having concluded

---

[5]Additionally, subsections (f), (g), and (h) govern situations in which a purchase order may not be involved at all. Subsection (c)(1)'s limited statement that the place of purchase order controls under these limited circumstances does not obviate the need for the (b)(1) threshold inquiry.

that this subsection does not support the Department's view, we need not and do not decide that question.

¶ 56    Even granting the Department considerable deference in interpreting its regulations, we cannot find that its reading of the regulation is correct. We conclude that the regulation, in subsection (c)(1), does define situs for retail occupation tax where purchase order acceptance occurs at the seller's place of business within the county, with sale at retail and the purchaser taking delivery within the state. We now turn to whether the regulation constitutes a valid implementation of the statutes.

¶ 57    Reconciling the Regulation with the Statute

¶ 58    As noted previously, the legislative intent of the local ROT Acts is to permit home rule municipalities and counties, along with the RTA, to enact retail occupation taxes in order to place some of the burden of paying for local government services on the retailers who enjoy them. See *Svithiod Singing Club*, 381 Ill. at 199. The retail occupation tax is laid upon the business of selling and not upon sales themselves. *Standard Oil Co.*, 383 Ill. at 142. Under our precedent, the business of selling is a composite of many activities. *Ex-Cell-O Corp.*, 383 Ill. at 321-22. Determining that enough of the business of selling is taking place in a given jurisdiction requires a fact-intensive inquiry. *Id.*

¶ 59    Administrative agencies have deference in enacting regulations, and regulations are presumed valid. *Julie Q. v. Department of Children & Family Services*, 2013 IL 113783, ¶ 28; *People v. Molnar*, 222 Ill. 2d 495, 508 (2006). Administrative agencies likewise are entitled to deference in interpreting the statutes they enforce. *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 387 n.9 (2010). Agencies' broad latitude in enacting regulations to enforce their statutes may include presumptions or other shortcuts in administrative decision making. We do not strike regulations down simply because they are unwise or bad policy. *Oak Liquors, Inc. v. Zagel*, 90 Ill. App. 3d 379 (1980). Thus, our review is not whether the regulation is the best possible implementation, but rather whether it is a permissible interpretation of the statute.

¶ 60    As noted above, the question of determining tax situs for a tax on the business of selling presents a complicated inquiry. One line of reasoning would persuade us to find the regulation constitutes a reasonable compromise between the administrative difficulty of determining appropriate tax situs in every situation and the need for accurate tax assessment. A regulation might call for a "shortcut" in decisionmaking without effecting a prohibited expansion or contraction of the taxing statute it implements.

¶ 61    On the other hand, a regulation cannot narrow or broaden the scope of intended taxation under a taxing statute. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 372 (2009). A regulation that does so must be held invalid. *Id.* We are persuaded that this regulation impermissibly narrows the local ROT Acts, contrary to the legislature's intention to allow local governments to collect taxes from retailers in their jurisdictions. First, it does not amply prescribe the fact-intensive inquiry contemplated by this court in *Ex-Cell-O*. Second, by allowing for only one, potentially minor step in the business of selling to conclusively govern tax situs, this regulation impermissibly constricts the scope of intended taxation.

-17-

¶ 62    In the case at hand, Hartney conducted the bulk of its selling activity in Forest View. It carried out all of its marketing efforts, maintained inventory, set prices, and cultivated sales relationships there. Hartney began routing its purchase orders through a separate sales office exclusively for the purpose of tax planning. While the clerk in Mark could bind Hartney, the clerk participated in no other aspect of the business of selling. This shift from Forest View to Mark removed Hartney from the retail occupation tax rolls of Forest View, Cook County, and the RTA. This effected more than a shift in tax allocation; it effected a full removal from tax liability. It did not, however, remove Hartney from the enjoyment of services offered by the Local Governments.

¶ 63    *Amici* Taxpayer's Federation of Illinois and Illinois Retail Merchants Association argue that certainty is a high priority for retailers, pointing to numerous states employing bright-line tests in determining tax situs. These are arguments well suited for the General Assembly. Should the legislature decide that tax certainty warrants a single-factor determination of retail occupation tax situs, it can draft such a test. However, by consistently employing the "business of selling" language that we have interpreted to require a fact-intensive inquiry to find the proper situs of a composite of many activities, the legislature has effectively invoked this court's precedent on the Retailers' Occupation Tax Law. It is not incumbent upon this court to decide the best tax policy; the court is to decide the tax policy the legislature has chosen and communicated through the statute.

¶ 64    The "Jurisdictional Questions" regulations embodied in 86 Ill. Adm. Code 220.115, 270.115, and 320.115 are too inconsistent with the statutes and case law to stand, and they are held invalid.

¶ 65                                    Abatement

¶ 66    Regulations carry the force and effect of law. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008). However, an agency's powers are limited to those granted by statute, and acts of an agency beyond its statutory powers are void. *Julie Q. v. Department of Children & Family Services*, 2013 IL 113783, ¶ 24. Likewise, "where the public revenues are involved, public policy ordinarily forbids the application of estoppel to the State." *Austin Liquor Mart, Inc. v. Department of Revenue*, 51 Ill. 2d 1, 4 (1972). Were these the only governing principles, the Department might still collect the tax despite its invalid regulation. In the absence of the void regulation, Hartney would be taxed under the general principles of the statute, left only with its argument for estoppel by erroneous information letters and other publications of the Department.

¶ 67    Yet the legislature has provided for a taxing agency to become bound to its own flawed interpretation of the law in effect at that time. See, *e.g.*, *McLean v. Department of Revenue*, 184 Ill. 2d 341, 363 (1998) (holding that an erroneous interpretive release precluded the Department from levying tax during that time period). The Taxpayers' Bill of Rights Act imposes upon the Department a duty to "abate taxes and penalties assessed based upon erroneous written information or advice given by the Department." 20 ILCS 2520/4(c) (West 2008). The Department's own written regulations provide guidance to taxpayers as to their liability. While we do not find Hartney's approach to retail occupation tax liability consistent

with the statute or this court's precedent, the company did act consistently with the Department's regulation published at the time.[6] It has been six years since the most recent of these sales were completed. Hartney's ability to recover such amounts from its customers, or to plan for such tax liabilities in advance, has long since passed.

¶ 68     We do not disturb the findings by the trial and appellate courts that, under the regulations, Hartney accepted its purchase orders and long-term contracts in Mark. Because of the Department's erroneous regulations, the Department has a duty under the Taxpayers' Bill of Rights Act to abate Hartney's penalties and retail occupation tax liability of Forest View, Cook County, and the Regional Transportation Authority for the audit period.

¶ 69     For the reasons stated, the judgment of the appellate court is affirmed in part and reversed in part.

¶ 70     Appellate court judgment affirmed in part and reversed in part.

---

[6]The Local Governments have additionally argued that Hartney's arrangement should be disregarded as a sham transaction. Analyzing a sham transaction requires assessment of the multiple steps of a transaction, with each being considered relevant, to determine whether economic reality accords with the formal arrangement. *Commissioner v. Court Holding Co.*, 324 U.S. 331, 334 (1945). Because we conclude the regulation erroneously sited tax based solely on purchase order acceptance in the case at bar, the sham transaction doctrine is unavailing. Hartney structured its affairs in accordance with the regulation, by relocating its order-receiving function to a lower tax jurisdiction. Hartney's arrangement was not without economic substance or economic effect. "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted." *Gregory v. Helvering*, 293 U.S. 465, 469 (1935).